448 P.2d 119

**The STATE of Arizona, Appellee,**

v.

**Joe Arthur ZAPPIA, Jr., Appellant.**

**No. 2 CA–CR 115.**

Court of Appeals of Arizona.

Dec. 13, 1968.

Rehearing Denied Jan. 22, 1969.

Review Denied Feb. 18, 1969.

Gary K. Nelson, Atty. Gen., Darrell F. Smith, former Atty. Gen., Carl Waag, Asst. Atty. Gen., for appellee.

Robert J. Hirsh, Tucson, for appellant.

MOLLOY, Judge.

Joe Arthur Zappia, Jr., was convicted of grand theft of an automobile. His trial was to a jury. He complains on this appeal that reversible error was committed through improper cross-examination, admission of improper and prejudicial testimony, insufficiency of the evidence and failure of the trial court to properly instruct the jury on circumstantial evidence.

At approximately 12:01 a. m., of July 23, 1966, the complainant, Bradley Conger, while sitting inside his apartment in the Citation Gardens Apartment complex, in Tucson, Arizona, heard a car start which he recognized to be his car. He ran outside and saw his car occupied by a person wearing sunglasses, one glove and a hat pulled down over his head, who " * * * seemed to be shifting the linkage back and forth trying to get it into reverse." Conger hit the hood with his hand and yelled, " * * * 'What the hell are you doing in my car,' * * *." He then went around to the driver's side of the car and grabbed hold of the window. The car speeded into reverse, leaving skid marks, and backed approximately three car lengths into the parking lot. Conger was " * * * half dragged and pulled along by the car."

When the car stopped, Conger tried to climb headfirst through the window on the driver's side. The thief kicked and scuffled with Conger as he entered, and escaped from the passenger side and fled with Conger chasing him. According to Conger, the thief never got more than ten feet ahead and was never out of his sight. Conger tackled the thief near the apartment house swimming pool and held him to the ground as neighbors came to help. With the assistance of his neighbors, Conger held the defendant at the scene until police officers arrived within a few minutes after the tackle. The defendant's hat and gloves were found on the ground nearby. In his trial testimony, Conger identified the defendant as the thief.

The defendant testified that he had been working, on the evening in question, at a nearby gas station and that a Bulova wristwatch had been left in the station by a party who, he understood, lived at Citation Gardens. While en route to return the wristwatch, he was walking on the sidewalk near the Conger vehicle and was attracted by a commotion in the parking lot. As he approached the Conger automobile, Conger either fell out, or jumped out, of the car, saw the defendant and started calling him " * * * dirty names * * *." An in-

stant before, another man ran by the defendant, yelling for help. The defendant began running towards one of the two offices of the apartment building, but was tackled by Conger.

The defendant asserts, on appeal, that reversible error was committed by the trial court in permitting the following cross-examination of the defendant by the prosecution:

"Q When did you first tell someone about having worked that evening?

"A When did I first tell someone?

"Q That's right.

"MR. HIRSH: I object to the question.

"A I don't understand the question.

"THE COURT: Rephrase your question.

"Q Do you recall seeing me before?

"A Yes, sir. Seeing you before?

"Q Yes.

"A Yes, sir.

"Q Do you recall talking to me before?

"A Yes, sir.

"Q In other proceedings of this matter?

"A I proceedings of this matter?

"Q Yes, in this case here?

"A I don't understand what the question is yet.

"Q Do you know what the expression, 'Justice Court' means?

"A Are you going back to the preliminary hearing?

"Q Yes.

"A Yes, sir, I know.

"Q Did you say anything about just having come from work at that time?

"MR. HIRSH: I object. If he is trying to lay a foundation for impeachment, it is improper.

"THE COURT: The question is if he ever said anything prior to this. He wouldn't have to say anything at the preliminary hearing.

"MR. AUGUSTINE: That wasn't the question, Your Honor.

"THE COURT: Rephrase your question.

"Q When prior to today did you first tell anyone that you were working that Friday night?

"MR. HIRSH: I am going to object. I don't know the purpose.

"THE COURT: Objection overruled.

"A Repeat the question.

"Q When prior to today did you ever tell anyone you worked at the service station that Friday night?

"A I didn't have to tell anyone I worked there that night.

"Q. Did you tell the police officer at the scene?

"MR. HIRSH: I am going to object. There is no obligation for him to state anything.

"THE COURT: That's right, there is no obligation for him to say anything but he can answer yes or no if he told a police officer. This is proper.

"A I don't recall.

"Q Did you tell anyone at the scene that night you were just coming from work and just innocently walking through the parking lot?

"A I told them I was walking through the parking lot and had been attacked. I told the police officers this.

"Q And you didn't tell them where you were coming from?

"A I had been beaten up so badly I had to be taken to the County Hospital. My back had been kicked and my head and I was in such shape I didn't even know what was happening.

&ast; &ast; &ast; &ast; &ast; &ast;

"Q Did you tell anyone about the watch at the scene?

"MR. HIRSH: I have to continue to object to this line of questioning by the State.

"THE COURT: Objection overruled. Certain questions I feel are appropriate because of the time element and certain ones are not.

"MR. HIRSH: I will make specific objections after this.

"THE COURT: Very well.

"Q (by Mr. Augustine) Did you tell anyone at the scene about the watch?

"MR. HIRSH: I object.

"THE COURT: Objection overruled.

"A I don't recall."

The defendant contends that the prosecuting attorney's cross-examination constituted improper comment on defendant's exercise of his constitutional right to remain silent, State v. Holliday, 92 Ariz. 168, 375 P.2d 370 (1962), State v. Garaygordobil, 89 Ariz. 161, 359 P.2d 753 (1961), upon his detention at the scene, Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974 (1966).

■ It is our view that the defendant by taking the witness stand waived his privilege against self-incrimination and in so doing subjected himself to this cross-examination as to the story which he delivered to the jury at the time of trial.

Taken without cross-examination, the story told by the defendant is convincing. But when subjected to competent cross-examination, in the manner detailed, the defendant's credibility is seriously impaired.[1]

Our Supreme Court has adopted the view that the accused, by taking the stand, opens himself up to " * * * legitimate cross-examination * * *." State v. Taylor, 99 Ariz. 85, 91, 407 P.2d 59, 63 (1965), cert. denied, 384 U.S. 979, 86 S.Ct. 1878, 16 L. Ed.2d 689 (1966). And see Udall, Arizona Law of Evidence § 98, at 160. The Supreme Court of the United States recognizes the waiver rule even in a civil action. Brown v. United States, 356 U.S. 148, 78 S.Ct. 622, 2 L.Ed.2d 589, 72 A.L.R.2d 818

(1958); and see Rogers v. United States, 340 U.S. 367, 71 S.Ct. 438, 95 L.Ed. 344, 19 A.L.R.2d 378 (1951) (pertaining to a grand jury inquiry). The *Taylor* view is not discordant with the general law of this country. McCormick, Evidence § 131, at 275 (Hornbook Series 1954); 8 Wigmore, Evidence § 2276, at 459–462 (McNaughton rev. 1961).

■ Whether a story is recently contrived is certainly legitimate cross-examination. The story that the defendant told at the time of trial, that he was returning a watch at the time he was assaulted by the complaining witness, is one that would, in the normal course of human events, have been immediately blurted out at the scene of this "mistaken" apprehension, if the apprehension were indeed mistaken.

■ Since the decision of Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974 (1966) (see n. 37, 384 U.S. 468, 86 S.Ct. 1602), it would appear to be the law of this land that silence in communicating to police officers can no longer be used as an admission against interest. However, we see nothing in *Miranda* (see n. 45, 384 U.S. 476, 86 S.Ct. 1602) that forbids cross-examination after the defendant has taken the stand. The law does not insist on thus garbling the truth:

"It must be conceded that the privilege is to suppress the truth, but that does mean that it is a privilege to garble it; although its exercise deprives the parties of evidence, it should not furnish one side with what may be false evidence and deprive the other of any means of detecting the imposition." United States v. St. Pierre, 132 F.2d 837, 840, 147 A.L.R. 240 (2d Cir. 1942). (The law interpreted by Judge Learned Hand.)

---

1. At the time of oral argument in this court, the defendant's counsel, in attempting to show prejudice to the defendant from the subject rulings, perhaps overstated the effect of this cross-examination in this language:

"If you look at the evidence in this case and if you look at the cross-examination of this defendant, this has destroyed, to my mind, the credibility of this defendant * * *."

Wigmore expresses this same thought in this language:

"The case of an *accused* in a criminal trial who voluntarily takes the stand is a special case. Here the privilege has been construed to protect him from being required to answer even a single question (§§ 2260 and 2268 supra. His voluntarily offer of testimony upon any fact is a waiver as to *all other relevant facts* because of the necessary connection between all. *Any* voluntary disclosure by the accused, except in the most unlikely situation, distorts the probative picture. The application of a rule of waiver to an accused, it should be noted, is at least as fair as its application to an ordinary witness. The accused has the choice at the outset, unhurried and with full knowledge that all questions will relate to his incrimination, whereas the ordinary witness is compelled to take the stand in the first instance and his opportunity for choice does not come until later when, perhaps by surprise and without clear portent, some part of an incriminating fact is asked for." 8 Wigmore, Evidence § 2276(2), at 459–60 (McNaughton rev. 1961).

■ It must be conceded that the prosecuting attorney made an aborted attempt to circumvent the teachings of State v. Garaygordobil, 89 Ariz. 161, 359 P.2d 753 (1961), that the State may not use, against the defendant, in cross-examination or otherwise, the failure of the accused to take the stand at a preliminary hearing. But this decision has a statutory, not a constitutional basis (see 89 Ariz. 166, 359 P.2d 753). *Garaygordobil*, in dicta, supports the thesis of this opinion:

"It is true that the defendant having taken the witness stand in his own behalf, did waive the protection afforded him by the above mentioned provisions, and was subject to cross-examination as any other witness within the limits of the appropriate rules." 89 Ariz. 166, 359 P. 2d 756.

■ Here the attempt to cause an adverse inference by cross-examining the defendant on the failure to tell his story at the preliminary hearing was blocked by prompt rulings and appropriate comment by the trial judge. We see no prejudicial error. Ariz.Const. art. 6, § 27, and see State v. Brooks, 103 Ariz. 472, 445 P.2d 831 (1968).

■ The defendant complains that he was asked questions by the prosecutor as to a Timex wristwatch, in a manner to suggest that the defendant had such a watch in his possession at the time of his arrest. It is true that the prosecutor may not ask questions which cast prejudicial or unfavorable insinuations without being prepared and able to prove the facts implied by the question. State v. Singleton, 66 Ariz. 49, 182 P.2d 920 (1947); and see Udall, Arizona Law of Evidence § 45, at 70. However, there is no unfavorable insinuation here. The defendant contended that he was returning a 23-jewel Bulova watch to a resident of this apartment complex when he was apprehended. The defendant could very well have had a Timex watch of his own without in any way casting discredit upon the story that he told the jury. Nor is there anything immoral or disreputable about having a Timex watch. The defendant may have forgotten that he had such a watch in his possession, or, he may not have had such a watch, or, he may have prevaricated on this collateral fact. Under our law, a witness cannot be impeached on a collateral matter. State v. Gortarez, 98 Ariz. 160, 402 P.2d 992 (1965). There is no reason why the prosecutor should be mandated to make a "federal case" out of this immaterial and innocuous fact or non-fact.

■ The defendant complains that a witness was permitted to relate statements made by the defendant, at the time of his apprehension, as follows:

"He kept saying let him go, he didn't do it. He kept saying to Mrs. Helms,

**554**

'Please, lady, you didn't see me, you really didn't see me do it.' He mentioned something about he had a wife and kids *and he couldn't get caught again.*" (Emphasis ours)

This statement loses relevancy if the portion thereof suggesting previous misconduct is stricken. Taken together, however, the statement becomes an implied admission of guilt. Evidence should be admitted if it is directly relevant and even if "prejudicial." State v. Chaney, 5 Ariz.App. 530, 428 P.2d 1004 (1967). There is no *Miranda* problem; the defendant was not in the custody of the police at the time of this statement. State v. Hughes, 8 Ariz. App. 366, 446 P.2d 472 (filed 11/7/68). There was no error in permitting the jury to hear this relevant evidence.

■ The defendant complains that there was insufficient evidence to merit conviction. Any objective appraisal of this evidence renders such an assertion far-fetched. If the testimony of the complaining witness is believed, the defendant was caught, wheel and gear shift in hand, stealing a car.

■ The defendant also complains of the failure to give a circumstantial evidence instruction. This is not a "circumstantial evidence" case. Though there are some collateral circumstances, such as finding the defendant's hat and gloves, these circumstances have practically no probative value. The real issue is whether it was the complaining witness or the defendant who told the truth. Accordingly, there was no need to give a circumstantial evidence instruction. State v. Stotts, 8 Ariz.App. 340, 446 P.2d 244 (1968); State v. McCormick, 7 Ariz.App. 576, 442 P.2d 134 (1968); cf. State v. Bradley, 102 Ariz. 482, 433 P.2d 273 (1967).

Judgment affirmed.

HATHAWAY, C. J., and KRUCKER, J., concur.