496 P.2d 152

**The STATE of Arizona, Appellee,**

v.

**William GREER, Appellant.**

**No. I CA–CR 351.**

Court of Appeals of Arizona,
Division 1.

April 27, 1972.

Review Denied June 20, 1972.

Gary K. Nelson, Atty. Gen., by William P. Dixon, Asst. Atty. Gen., Phoenix, for appellee; Professor Joel Finer, Michael Meehan, Carol Druke, College of Law, University of Arizona, Tucson, of counsel.

Ross P. Lee, Maricopa County Public Defender, by William Carter, and Anne Kappes, Deputy Public Defenders, Phoenix, for appellant.

HATHAWAY, Judge.

Appellant-defendant, William Greer, hereinafter defendant, was convicted of burglarizing an El Rancho Warehouse located at 35th Avenue and Buckeye Road in Phoenix, Arizona. Defendant was convicted of first-degree burglary and was sentenced to a term of from one to five years.

Defendant was positively identified by two employees of El Rancho who, during their ten to twenty minute chase of defendant, had ample opportunity to observe and identify him. Their vehicles were frequently parallel and at times no more than a few feet apart. Descriptions given by both witnesses were very close to defendant's actual age, height and weight.

Defendant presented alibi evidence through his own testimony and that of Ruby Robinson with whom he claimed to have been at the time of the burglary. Defendant's story was marred by inconsistencies.

The issue raised on appeal arises out of the county attorney's cross-examination of defendant as follows:

"Q Did you tell the police about Ruby Robinson?

A No, I didn't.

Q You never told them, you never said a word to them, did you?

A No.

Q· You never told them you knew her at any time?

A I never spoke to any police to tell them anything.

Q Were you ever arrested?

A I was arrested on the warrant, sure.

Q And you didn't care to volunteer any statement that would exonerate yourself?

A No.

MR. HYDER: I don't have any further questions."

At the time these questions were asked, the defense made no objection nor motion to strike. Defendant's motion for a new trial specified no grounds and made no reference to the above questions.

In the original hearing before this court, defendant based his allegation of error upon the proposition that the State may not comment upon the exercise by an accused of his constitutional right not to testify in his own defense. This is established by Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). Defendant relied upon the rule derived from Griffin that the state may not comment upon extrajudicial admissions by silence which occur during the period of custody, correctly citing State v. Simoneau, 98 Ariz. 2, 401 P.2d 404 (1965); United States v. Arnold, 425 F.2d 204 (10th Cir. 1970); United States v. Nolan, 416 F.2d 588 (10th Cir. 1969), cert. denied, 396 U.S. 912, 90 S.Ct. 227, 24 L.Ed.2d 187 (1969). To allow such comment would of course impose a penalty upon the exercise of constitutional privilege. We also agree with the rule stated by defendant that merely introducing admissions by silence during custodial periods for the purpose of proving guilt violates the self-incrimination privilege, citing State v. McAlvain, 104 Ariz. 445, 454 P.2d 987 (1969), cert. denied, 396 U.S. 1023, 90 S.Ct. 597, 24 L.Ed.2d 516 (1970); State v. Villalobos, 6 Ariz.App. 144, 430 P.2d 723 (1967); United States v. Pearson, 344 F. 2d 430 (6th Cir. 1965).

We said in our original opinion, 16 Ariz. App. 156, 492 P.2d 36, that defendant had every right to remain silent while in custody and at the trial, but upon voluntarily taking the stand in his own behalf, he waives his privilege of silence at least to the extent of *legitimate cross-examination.* While this statement remains true, we now believe that the cross-examination here in question regarding defendant's earlier silence is not within the realm of legitimate cross-examination.

Several cases have been brought to our attention for the first time on rehearing resulting in our reconsideration of our decision in this case and our previous decision in State v. Zappia, 8 Ariz.App. 549, 448 P. 2d 119 (1968), review denied 1969, cert. denied, 396 U.S. 861, 90 S.Ct. 132, 24 L. Ed.2d 113 (1969). We believe *Zappia* can be distinguished from the case *sub judice* by the prompt rulings and appropriate comment of the trial judge which there minimized any adverse inference. In the case at bar the prejudice to the defendant was undiminished by any rulings or judicial admonition.

We have considered Harris v. New York, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971) where the court held that a confession by the defendant which was substantially inadmissible under *Miranda,* could be used to impeach the defendant's testimony. The court concluded:

"The shield provided by Miranda cannot be perverted into a license to use perjury by way of a defense, free from the risk of confrontation with prior inconsistent utterances. We hold, therefore, that petitioner's credibility was appropriately impeached by use of his earlier conflicting statements." 401 U.S. at 226, 91 S.Ct. at 646.

The difference between *Harris* and the case before us is the clearly conflicting prior statement in *Harris.* Were we able to equate a defendant's silence with a conflicting statement, then *Harris* would be controlling, but we are not. An accused is warned that he has the right to remain silent. Is

he to take the officer at his word or is he to read into this right to silence various qualifications of *"but* if you do," *"unless* your later testimony is something the normal person would have told us now," or *"however,* a jury will later be made aware of your silence and encouraged to draw an adverse inference therefrom"? It is the ambiguous nature of any silence following this warning that makes us doubt its evidentiary value.

In other circumstances silence may not be ambiguous and may be as direct and clear a communication as any spoken word. We note at this point a very recent case by the State Supreme Court, State of Arizona v. O'Dell, 108 Ariz. 53, 492 P.2d 1160 (1972), in which our Supreme Court held under very limited circumstances that an admission by silence can be admissible. The holding of *O'Dell* was limited to the facts of that case where the defendant initiated the conversation with a police officer in an attempt to exculpate himself and upon being questioned by the officer as to where he (the defendant) had gotten a $100 bill with the victim's name written across it, he refused to explain or to say anything further. The Supreme Court agreed with the state's argument that silence at this particular point was not an admission by silence but was rather a form of communication which could be testified to as if he had actually spoken something. We believe that the *O'Dell* circumstances are considerably different from those in the case before us.

We have been persuaded to reverse ourselves by the well-reasoned opinion of the 9th Circuit Court in Fowle v. United States, 410 F.2d 48 (9th Cir. 1969). There the court recognized the questionable probative value of the defendant's earlier silence by pointing out its *highly ambiguous* nature. The court then cited the case of Grunewald v. United States, 353 U.S. 391, 77 S.Ct. 963, 1 L.Ed.2d 931, 62 A.L.R.2d 1344 (1957) in which the supreme court had adopted the same rationale. The court in *Grunewald* relied upon the well-known principle that prior statements are admissible for impeachment purposes only if they are in fact inconsistent with statements made at the trial, but rejected the prior silence of the defendant in that case as being ambiguous and not sufficiently inconsistent with the statements at trial to warrant their use for impeachment purposes. Defendant's silence in that case had occurred during questioning by a grand jury. He then later answered the same questions at trial in a manner consistent with his innocence. The supreme court reasoned that innocent persons might be wise to exercise their constitutional right to remain silent before the grand jury. *See* Fagundes v. United States, 340 F.2d 673 (1st Cir. 1965). There, the accused in circumstances very similar to the case now at bar sought to establish an alibi in his trial testimony. However, on cross-examination the prosecution was permitted to ask him why he had not protested his innocence at the time he was arrested. The court held that the attempt to impeach the accused's testimony in this manner was prejudicially erroneous.

"When one takes the stand in his own defense he of course puts his credibility as a witness in issue. Nevertheless we think it reversible error to permit evidence of refusal to talk and of request for counsel on arrest to be used for the purpose of impeachment. In the first place such evidence is ambiguous. Fagundes's words when arrested can as well be taken as indicating reliance upon constitutional rights as supporting an inference that his alibi was an afterthought. There is nothing to indicate which interpretation is more probable. Cf. Grunewald v. United States, 353 U.S. 391, 415–424, 77 S.Ct. 963, 1 L.Ed.2d 931 (1957). In the second place we think it reversible error to permit a jury to draw any inference adverse to one accused of crime from his reliance upon his constitutional right to silence and to the advice of counsel. The right to silence on arrest is akin to the right to decline to take the witness stand in one's own defense. Helton v. United States, 221 F.2d 338, 341–342 (C.A. 5, 1955)." 340 F.2d at 677.

The *Fowle* court, after rejecting the evidentiary value of the accused's silence because of its ambiguous nature went on to consider the constitutional question and to decide that any use of *Fowle's* silence had violated the Fifth Amendment. In support of this decision it turned to the concurring opinion in *Grunewald* written by Mr. Justice Black and endorsed by the Chief Justice, Justice Douglas and Justice Brennan. The *Grunewald* concurring opinion went beyond the limited evidentiary question on which the majority opinion was written, to decide the constitutional issue itself:

"I agree with the Court that use of this claim of constitutional privilege to reflect upon Halperin's credibility was error, but I do not, like the Court, rest my conclusion on the special circumstances of this case. I can think of no special circumstances that would justify use of a constitutional privilege to discredit or convict a person who asserts it. The value of constitutional privileges is largely destroyed if persons can be penalized for relying on them. It seems peculiarly incongruous and indefensible for courts which exist and act only under the Constitution to draw inferences of lack of honesty from invocation of a privilege deemed worthy of enshrinement in the Constitution." 353 U.S. 425–426, 77 S. Ct. 984–985.

When in Griffin v. California, supra, the U. S. Supreme Court held it improper to comment upon the defendant's failure to testify during his trial, it did so on the basis of the Fifth Amendment, rejecting this comment as "a penalty imposed by courts for exercising the constitutional privilege. It cuts down on the privilege by making its assertion costly." Since *Griffin*, the supreme court has made it very clear that illegal penalties for exercising one's constitutional rights are not limited to fines or imprisonment. For example, in Spevack v. Klein, 385 U.S. 511, 87 S.Ct. 625, 17 L. Ed.2d 574 (1967), an attorney was disbarred for asserting his privilege against self-incrimination. The supreme court concluded that the Fifth Amendment's self-incrimination clause extended to lawyers as well as to other individuals and that it should not be watered down by imposing the dishonor of disbarment and the deprivation of his livelihood as the price for asserting it.

 In *Fowle*, as in the case presently before this court, the accused chose to testify in his own defense. If we follow the state's argument the defendant's election to speak in his own defense becomes an expensive choice since we must then charge him the cost of being impeached by his earlier exercise of his constitutional right to remain silent. We think this is no less an impermissible penalty than a fine, imprisonment or disbarment. The accused is then faced with the alternative of speaking in his own behalf and being penalized by the earlier exercise of his right to remain silent or of not taking the stand in his own behalf and suffering whatever connotation the jury wishes to give to his failure to speak. If we permit the use of one's constitutional right against him in this way we must then begin reading the *Miranda* rights to say "you have a right to remain silent but if you do this fact will later be used against you." This is inconsistent with any reasonable interpretation of the Fifth Amendment.

For the reasons above stated, we reverse and remand for proceedings consistent with this opinion. Insofar as State v. Zappia is inconsistent with this opinion, it is reversed.

HOWARD, J., concurs.

NOTE: This cause was decided by the Judges of Division Two as authorized by A.R.S. § 12–120, subsec. E.

HAIRE, Judge (dissenting).

In my opinion the judgment of the trial court should be affirmed.

In State v. Zappia, 8 Ariz.App. 549, 448 P.2d 119 (1968), cert. denied, 396 U.S. 861, 90 S.Ct. 132, 24 L.Ed.2d 113 (1969), this court expressed the view that there is ". . . nothing in *Miranda* . . . that forbids cross-examination after the

defendant has taken the stand." *Id.* at 552, 448 P.2d 122. The United States Supreme Court has since validated that view. In Harris v. New York, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971), the court held that a confession which could not be admitted substantively because it did not meet *Miranda* requirements, could be used to impeach a defendant who had taken the witness stand. The evil which the court sought to check by this reading of *Miranda* was perjury. Said the court:

> "Every criminal defendant is privileged to testify in his own defense, or to refuse to do so. But that privilege cannot be construed to include the right to commit perjury." *Id.* at 225, 91 S.Ct. at 645.

Admittedly the danger of perjury exists in any criminal case. It therefore cannot justify every admission of impeaching evidence otherwise inadmissible in the state's case in chief. A test for admission, however, was clearly suggested by *Harris:*

> "It does not follow from *Miranda* that evidence inadmissible against an accused in the prosecution's case in chief is barred for all purposes, *provided of course that the trustworthiness of the evidence satisfies legal standards." Id.* at 224, 91 S.Ct. at 645. (Emphasis added)

The question presented here, then, is more evidentiary than constitutional. It is: does silence constitute trustworthy evidence for purposes of impeaching an alibi?

The majority in this court adopts the view that silence in the face of a *Miranda* warning is so ambiguous as to render it inadmissible; that in any case silence can be taken equally as supporting an inference that the defendant was fabricating his alibi or that he was relying on his constitutional rights. In Zappia, supra, however, this court suggested a different, and perhaps more pragmatic approach to the problem, i. e., that in *some* cases:

> "The story that the defendant told at the time of trial . . . is one that would, in the normal course of human events, have been immediately blurted out at the scene of this 'mistaken' ap-

prehension, if the apprehension were indeed mistaken." 8 Ariz.App. at 552, 448 P.2d at 122.

In *Zappia,* the court reached this judgment on the basis of the defendant's testimony that he was mistakenly apprehended at the scene of an attempted auto theft, and that he was in the area for other legitimate reasons. The same conclusion could well be reached in the present case, where the defendant testified that he had been in the company of Ruby Robinson at the time of the burglary.

Our supreme court expressed doubt as to the probative value of admissions by silence in the recent case of State v. O'Dell, 108 Ariz. 53, 492 P.2d 1160 (1972). These remarks were made, however, in the context of a case where the prosecution introduced evidence of the defendant's silence in its case in chief. It must be remembered that impeachment matters go to credibility and do not ordinarily constitute evidence of guilt. A cautionary jury instruction emphasizing this distinction, as was given in Harris, supra, should sufficiently protect the defendant against prejudicial inferences, where the trial judge has determined that allowing the evidence in would provide a valuable aid to the jury in assessing the defendant's credibility.

The majority's constitutional objection to the proffered evidence is twofold. First, they reason that if this evidence is deemed admissible, the defendant is forced into the "expensive choice" of either taking the stand and facing impeachment by his earlier exercise of his right to remain silent, or of not taking the stand and thus possibly prejudicing his defense. In answer to this, it should be noted that the same sort of quandry faced the defendant in Harris, supra. The court nevertheless held the evidence admissible in that case, reflecting the intelligent judgment that the right to take the stand should not afford a license for perjury.

Second, adopting the language of Justice Black's concurring opinion in Grunewald v. United States, 353 U.S. 391, 77

S.Ct. 963, 1 L.Ed.2d 931 (1957), the majority asserts that it is inconsistent with any reasonable interpretation of the Fifth Amendment to allow a jury to draw inferences on credibility from invocation of a constitutionally protected privilege. Again, however, this is precisely what was done in Harris, supra. The only difference is that in *Harris* there was no reliance on a constitutionally protected right, as no *Miranda* warning was given. Here there *may* have been reliance, as a *Miranda* warning was given. Whether, in fact, the defendant did rely on the warning, however, is a factual matter properly determinable by the jury. If the defendant claims that he remained silent in reliance upon his constitutional right to do so, then he may so explain this silence to the jury.

Unfortunately, for procedural reasons, it is uncertain as to what extent the above-discussed principles came into play in the jury's verdict in this case. The defense failed to object to the prosecution's line of questioning at trial, and the court had no opportunity to either refuse to permit the questioning or correct any error by instructing the jury that the defendant was under no duty to make any statements upon his arrest. Ordinarily errors of any type may not be made the basis for appeal unless a proper objection is made at the time the proof is offered. The recognized exception to this rule—"fundamental error"—does not come into play in this case, as there was nothing inherently prejudicial in the evidence admitted. As held by the Arizona Supreme Court in State v. Martin, 107 Ariz. 444, 489 P.2d 254 (1971), reversal is not mandated by every trespass on constitutional rights.

For the foregoing reasons I would affirm the judgment entered by the trial court.