592 P.2d 1299

**The STATE of Arizona, Appellee,**

v.

**Danny RIOS and Robert Glenn Becker, Appellants.**

**No. 2 CA–CR 955.**

Court of Appeals of Arizona, Division 2.

Feb. 7, 1979.

Rehearing Denied March 6, 1979.

Review Denied March 27, 1979.

**34**

Robert K. Corbin, Atty. Gen. by William J. Schafer, III, and R. Wayne Ford, Asst. Attys. Gen., Phoenix, for appellee.

Hirsh, Shiner & Walker, P.C., Tucson, for appellants.

OPINION

RICHMOND, Chief Judge.

Defendants Danny Rios and Robert Becker appeal from their convictions of transportation of marijuana and conspiracy to transport marijuana, A.R.S. § 36–1002.07, and the sentences thereon. They raise two questions:

1. Did cross-examination regarding their silence at the time of arrest violate their Fifth Amendment rights?

2. Was the evidence insufficient to support conviction because the state failed to prove the marijuana was cannabis sativa L?

Because our answer to the first question is yes, we reverse and remand for new trial.

Both defendants were arrested on the night of February 6, 1976, in a park near the Mexican border in the city of Douglas. On three occasions the previous month border patrol agents had observed tracks leading from the border to Becker's residence across the street from the park. At about 6:00 p. m. on February 6, a border patrolman began surveillance of the back of the residence with binoculars from his car parked in an alley a little less than two blocks away. At approximately 7:40 p. m. he saw a figure throw a large sack over the wall into the yard. As he continued to watch, five more figures repeated the procedure. The officer called for other border patrol units and then drove down the alley toward the residence, where he left his car blocking one of two driveways into the yard. Six or more subjects ran out through the other driveway and all but two disappeared into the darkness. The officer could see two figures silhouetted against the light from the park and followed in that direction. Two other border patrol agents arrived to join the chase, and each of them eventually captured one of the defendants. The first officer on the scene testified he had Rios in sight from the time Rios left the yard until he was apprehended hiding behind a bush, and identified Becker as the other subject who had run into the park.

Both defendants took the stand and denied involvement. Rios testified on direct examination that he had been jogging and sprinting in the park. Becker testified that he had been playing basketball. Each testified he did not know why he was being chased and fled without realizing his pursuer was a law enforcement officer. On cross-examination Rios was asked:

Q. Did you make any explanation?

A. No, I just—I didn't know what was going on when I saw him I thought he was just trying to get some wetbacks or something.

Q. So what did you do?

A. I did just what he told me to do.

Q. No explanation?

A. No, I didn't give him a bad time at all.

Q. Did you say why me?

A. No.

Q. Nothing at all?

A. I just know that it is best not to say anything. I was being arrested, I was being pushed, he was definitely treating me, pushing me and what have you. He handcuffed me extremely tight and he left the cuffs on to where they would keep closing and he proceeded to jump to more conclusions.

Q. And you didn't say anything?

A. What could I say, he wasn't going to turn me loose.

Q. I am just asking you did you ever say anything?

A. No.

Q. Even when you got back?

A. No.

Q. At no time?

A. Not that I can remember.

Becker also was questioned by the prosecutor about his silence:

Q. What did you say?

A. I said I was going on.

Q. What did he say?

A. He said you are under arrest. I didn't say anything after that.

Q. Did you ask him what for?

A. Yeah. I asked him what for, but he didn't say, he just took me back to the house.

Q. Did he talk to you, I think the testimony was when they got both of you they got you and Rios together, is that right?

A. Yes, Ma'am.

Q. Did you ever ask what the problem was or why?

A. Well, when we got to the house I did, I asked what was going on and he told me.

Q. And not until then?

A. Uh-huh.

Q. Did you say anything at all?

Defendants contend their case is governed by *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). To the contrary, we agree with the state that *Doyle* turns on the use for impeachment purposes of a defendant's silence after receiving *Miranda* warnings[1] at the time of his arrest. Here, neither defendant was given *Miranda* warnings until sometime after the colloquies in question.

On the other hand, no such distinction exists in this court's decision in *State v. Greer*, 17 Ariz.App. 162, 496 P.2d 152 (1972). The opinion in the latter case not only antedates *Doyle* but expressly relies on *Fowle v. United States*, 410 F.2d 48 (9th Cir. 1969), involving a pre-*Miranda* conviction. The reasoning of *Fowle* adopted by this court is that impeachment of a defendant by his earlier exercise of his right to remain silent is no less an impermissible penalty for exercising the constitutional privilege than a comment on his failure to testify at all. *See Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965).

It is true this court also noted in *Greer* that the ambiguous nature of an accused's silence following a *Miranda* warning makes the evidentiary value of his silence doubtful. The same is equally true, however, in the absence of the warning, unless his silence is totally inconsistent with his innocence and with his exculpatory statement

1. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

made at trial. *United States v. Henderson*, 565 F.2d 900 (5th Cir. 1978).[2]

■ Nor do we agree with the state that the prosecutor's questions were invited by defense counsel asking Rios on direct examination:

Q. Did you admit anything to him (the arresting officer)?

A. No. At the time I didn't really know what was going on.

Inasmuch as the state had never attempted to prove any admission by either defendant, the testimony was of no probative value on any disputed issue and did not open the door to otherwise impermissible impeachment by silence.

■ Finally, the state contends that any error, although fundamental, was harmless beyond a reasonable doubt because the evidence of guilt was overwhelming. *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). We do not so regard it. As in *State v. Greer*, supra, the defendants at trial were disputing a positive identification. We cannot say the circumstantial evidence based on comparison of footprints with their footwear was so overwhelming as to eliminate, beyond a reasonable doubt, the possibility that the improper cross-examination was a significant factor in the verdicts. *Cf. State v. Anderson*, 110 Ariz. 238, 517 P.2d 508 (1973).

■ Defendants' other contention regarding the sufficiency of the evidence is without merit. The statute under which they were convicted proscribes the transportation of "any marijuana" and the failure of the state to establish the species of cannabis was not fatal to its case. Defendants base their argument on *State v. Bollander*, 110 Ariz. 84, 515 P.2d 329 (1973), in which the court distinguished from marijuana those cannabis derivatives punishable under § 36–1002.02. The narcotic substance involved in *Bollander* was identified as hashish, not marijuana. From the testimony of the expert witness, the court distinguished hashish as a derivative of marijuana or "the resin extracted" from the marijuana plant, and went on to state:

We believe that the term "marijuana" as it is commonly understood is the green, leafy substance often called "grass" which is composed primarily of the leaves of the cannabis sativa plant in its natural state.

110 Ariz. at 87, 515 P.2d at 332.

It does not follow, however, that "marijuana" is restricted to the leaves of the sativa plant to the exclusion of other species of cannabis. For detailed analysis and rejection of a similar argument, *see United States v. Walton*, 168 U.S.App.D.C. 305, 514 F.2d 201 (1975).

The judgments of conviction and sentences are vacated and the case remanded for a new trial as to each defendant.

HOWARD and HATHAWAY, JJ., concurring.

**2.** *Compare Greer*, supra, with *State v. O'Dell*, 108 Ariz. 53, 492 P.2d 1160 (1972).