430 P.2d 723

STATE of Arizona, Appellee,

v.

Frank Soto VILLALOBOS, Appellant.

No. I CA–CR 121.

Court of Appeals of Arizona.

July 28, 1967.

Darrell F. Smith, Atty. Gen., by Leroy R. Park, Asst. Atty. Gen., for appellee.

Vernon B. Croaff, Public Defender, by Grant Laney, Deputy Public Defender for appellant.

CAMERON, Chief Judge.

The defendant appeals from a conviction and judgment of guilt to the crime of burglary, first degree. (A.R.S. §§ 13–301, 13–302) We are called upon to determine the admissibility of hearsay testimony under the "res gestae" or "spontaneous exclamation" exception and the admission of testimony concerning a so-called "admission by silence".

The facts necessary for a determination of this appeal follow. The home of Victor O. Rivera was burglarized between the hours of 7:30 p. m. and 9:45 p. m. on the night of 21 October 1965 and a television set was taken. The home is located at 709 East Apache Street, Phoenix, Arizona. Esther Estrada resides next door to the Rivera home at 707 East Apache. She

and a friend, Rosemary Alcala, were in the Estrada home early in the evening in question when two young men, the defendant and Ernest ("Nito") Garcia, visited the two girls. Esther Estrada testified that the two young men left when her father told them that the girls could not go out with them. Five or ten minutes later they heard glass breaking and went to the kitchen to look outdoors. They saw a male going into Rivera's home. Esther and Rosemary then went outside. They saw one male in the alley and Esther testified that it was "Nito". Esther then saw a second male run from the house, and she testified that she identified him as the defendant by the clothes he was wearing and by his build, although she did not see his face. She stated that both men ran in the same direction, towards the nearby home of "Nito" Garcia. She did not see either person carry anything as they left. She then went into her home and telephoned to the police. Some five minutes later Rosemary Alcala came back into the house.

Esther was permitted over objection by counsel to testify as to what Rosemary Alcala said when she returned. The testimony was as follows:

"THE COURT: Overruled. You may answer.

"Q The question to you, Esther, was: What did Rosemary say to you when she came back in?

"A She said that it was Frank, when he was running, because she saw his beard and she recognized him by his profile.

"Q By profile do you mean the side of his face and the beard?

"A Uh huh.

"Q You, yourself, did not see his full face or, as a matter of fact, any part of his face?

"A No."

Phoenix City Police Officer William Gilbert Brady, Jr., was called to testify. He stated that the day following the burglary he went to the home of Mr. Francisco Gar-

cia (the father of "Nito" Garcia) at 810 East Durango in Phoenix. Officer Brady was permitted to testify over objections concerning a conversation he had with Mr. Francisco Garcia in the presence of the defendant at the Garcia home the same morning. The Officer testified as follows:

"The Witness: I asked Mr. Garcia if this was the Frank that had been at his home on the prior night. He advised me that it was the Frank that had been at his home at 8:00 p.m. with his son, Ernest, and that he had returned sometime later that night carrying a TV set and that Frank had placed the TV set in the house.

"Q Did Mr. Villalobos make any statement to Mr. Garcia?

"A No, sir. He did not."

Neither Mr. Francisco Garcia nor Rosemary Alcala were called by the State and did not testify at the trial.

We will first consider the issues raised by the admission of the hearsay testimony concerning Rosemary Alcala's identification of defendant. The court admitted this testimony over objection of the defense attorney indicating that the statement in question made by Rosemary Alcala would qualify as a "spontaneous exclamation", an exception to the rule against hearsay.

■ The basis for the exclusion of hearsay testimony lies in the fact that hearsay testimony is not subject to the test which can ordinarily be applied for the ascertainment of the truth of testimony. The declarant is not present and available for cross-examination, and both the court and the jury are without opportunity to test the credibility of hearsay statements made by observing the demeanor of the person who made them. Such evidence has also been excluded for the reason that a statement by hearsay is one made without the sanction of an oath and without the declarant being under a responsibility to answer for the crime of perjury in making a willful falsification. 29 Am.Jur.2d, Evidence, § 493. There are many exceptions to the

hearsay rule, one of them being that which is frequently called "res gestae" or "spontaneous exclamation". The term "res gestae" comprehends a situation which presents a startling or unusual occurrence sufficient to produce a spontaneous and instinctive reaction, during which interval certain statements are made under such circumstances as to show lack of forethought or deliberate design in the formulation of their content. Whether a declaration is a part of the res gestae depends upon whether the "declaration was the facts talking through the party, or the party talking about the facts", and is usually left to the discretion of the trial court. Southwestern F. Lines, Ltd. v. Floyd, 58 Ariz. 249, 119 P.2d 120 (1941). Spontaneity is the most important factor governing the admissibility of utterances sought to be admitted under this exception to the hearsay rule. Pickwick Stages Corporation v. Williams, 36 Ariz. 520, 287 P. 440 (1930).

■ Three requisites must be shown in order for statements or exclamations to come within the exception to the hearsay rule: (1) There must be a startling event; (2) the words spoken must be spoken soon after the event so as not to give the person speaking the words a time to fabricate; and (3) the words spoken must relate to the startling event. State v. McLain, 74 Ariz. 132, 245 P.2d 278 (1952), State v. Woolery, 93 Ariz. 76, 378 P.2d 751 (1963). The Court elaborated on the reason for these requisites in Keefe v. State, 50 Ariz. 293, 72 P.2d 425 (1937):

"The admissibility of such exclamation is based on our experience that, under certain external circumstances of physical or mental shock, a stress of nervous excitement may be produced in a spectator which stills the reflective faculties and removes their control, so that the utterance which then occurs is a spontaneous and sincere response to the actual sensations and perceptions already produced by the external shock. Since this utterance is made under the immediate and uncontrolled domination of the

senses, rather than reason and reflection, and during the brief periods when consideration of self-interest could not have been fully brought to bear, the utterance may be taken as expressing the real belief of the speaker as to the facts just observed by him."

■ Esther Estrada testified that after she saw the men run away from her neighbor's home she went inside her house to call the police. Rosemary Alcala and Esther Estrada's sister stayed outside the house for a period of about five minutes before returning and telling Esther that it was the defendant Frank. The testimony shows no foundation to indicate that the statement made by Rosemary Alcala and testified to by Esther Estrada properly came within the exception to the hearsay rule known as "res gestae" or "spontaneous exclamation". Even though the statement was made soon after the event which Rosemary Alcala witnessed and the length of time between the exciting event and the words spoken is crucial and will depend upon the effect that the event has upon the person speaking, State v. Hunt, 2 Ariz.App. 6, 406 P.2d 208 (1965), there is nothing to indicate her "reflective faculties" had been stilled and that her statement was a "spontaneous" and sincere response to the shock of the burglary. Keefe v. State, supra.

■ This brings us to the second question raised by defendant. This is a question of the propriety of the testimony of Police Officer Brady concerning the silence of the defendant in face of the accusation made by Francisco Garcia. The United States Supreme Court has made it clear that comment upon the failure of a defendant to testify violates the Fifth Amendment to the United States Constitution, Griffin v. State of California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965), and the protection of the Fifth Amendment applies to the states. Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964). The federal courts have stated:

"* * * after the arrest and during an official examination, while respondent is in custody, it is common knowledge that he has a right to say nothing. Only under peculiar circumstances can there seem to be any duty then to speak. Lacking such circumstances, to draw a derogatory inference from mere silence is to compel the respondent to testify; * * *." United States v. Pearson, 344 F.2d 430 (6 Cir. 1965), McCarthy v. United States, 25 F.2d 298 (6 Cir. 1928).

See also People v. Cockrell, 63 Cal.2d 659, 47 Cal.Rptr. 788, 408 P.2d 116 (1965).

■ In Arizona, statute A.R.S. § 13–163 and case law State v. Acosta, 101 Ariz. 127, 416 P.2d 560 (1966), State v. Jordan, 80 Ariz. 193, 294 P.2d 677 (1956), it has always been error to comment upon the failure of the defendant to testify at the trial of a matter. The federal cases cited above extend their protection to pretrial proceedings but only after arrest. In the instant case we are concerned with an alleged admission by silence made before arrest, and our Supreme Court appears to have extended the Fifth Amendment to the United States Constitution to these situations:

"We agree and do not approve the introduction of evidence of an accused's silence in reply to questions when he is in custody *or under other circumstances* where it is his constitutional right to refrain from incriminating himself under the Fifth Amendment to the Constitution of the United States." State v. Simoneau, 98 Ariz. 2, 401 P.2d 404 (1965). (Emphasis ours.) But see State v. Marsin, 82 Ariz. 1, 307 P.2d 607 (1957).

This matter is reversed and remanded for new trial.

DONOFRIO and STEVENS, JJ., concur.