485 P.2d 1158

**STATE of Arizona, Appellee,**

v.

**Richard Dale PETERSON, Appellant.**

**No. 2170.**

Supreme Court of Arizona,
In Division.

June 17, 1971.

STRUCKMEYER, Chief Justice.

Richard Peterson, appellant herein, was tried, found guilty of robbery, rape and kidnapping, and duly sentenced therefor. He appeals.

At about 2:00 a. m. on May 29, 1969, the prosecuting witness, hereinafter called the victim, was returning to her home, driving a pickup truck, after taking her husband to the Phoenix, Arizona airport. As she stopped at a stop sign, three men opened the door of the pickup, forced her at gunpoint to drive to a secluded spot, robbed her, and each engaged in forceful acts of sexual intercourse with her. Defendant and two others, George Gaffney and Joe Hill, were charged with the crimes. Defendant pleaded not guilty and at the trial asserted an alibi.

The evidence shows that the truck was only a few weeks old and that it had been washed late on the morning of the previous day. The washing included the windows. After the washing, it was kept outside a store owned by the victim and her husband during the day, and at night in the carport at their home. In both places it was where it could be closely observed. No one was seen to come near it between the time of the washing and the commission of the offenses, and, although the victim had used it for shopping, the doors had been locked.

Defendant testified that from time to time he rifled motor vehicles, stealing whatever valuables he found in them. Thus, he argued that his fingerprints might have been left in the pickup. His fingerprints, however, were found on the inside of the door window, pointing upward, the inference being that this is the position in which they would be found if he had been inside the cab of the truck between its washing on May 28th and the time of the crimes on the early morning of May 29th.

The State's case of identification was otherwise weak. At the trial the victim estimated his height and weight, and stated that if he was the right man, he was the third one to rape her. She had said at the time of the crime that he had long side-

Gary K. Nelson, Atty. Gen., by Carl Waag, Asst. Atty. Gen., Phoenix, for appellee.

McVay & Bradford, Phoenix, for appellant.

burns, an "afro" type hairdo, and a wart on the right side of his face. At the trial, the hairdo, sideburns and wart were missing. But at the trial she refused to positively identify him, as stated, saying merely that he was the right height, weight and age, and looked somewhat like the third rapist.

■ As the State said in its opening statement, the victim:

"will only be some help in identifying the people that did this thing to her. The best witness, the main witness of the State's case will be the prints that were found on that vehicle, and [the victim] will support those prints by indicating to you how the two defendants sitting here resemble the two * * * in age, size, weight, and body structure."

We think the evidence is sufficient to submit defendant's identity to the jury as a factual question.

■ Defendant urges that the failure of the prosecution to disclose that the victim had also misidentified another one of her assailants was a suppression of evidence violating due process. The following facts are the basis of his argument. At the preliminary hearing of Joe Hill, the victim positively identified him as the first of the three men who raped her in the cab of her pickup. At the trial, she testified:

"Q. Have you been informed by the prosecutor that this action against Mr. Hill the man that you previously positively identified, that that action has been dismissed?

A. [By the victim] I was informed of that * * * I still believe it was him."

Defendant contends that the failure to disclose the dismissal indicates that the victim's identification was completely worthless. However, there is nothing to show that the case against Hill was dismissed because of a mistake in identity. There are many other possible reasons. Moreover, it seems clear that no prejudice resulted because the dismissal was disclosed to the jury during the course of the trial.

■ Defendant urges that the court erred in failing to declare a mistrial as requested, when the prosecution, on cross-examining elicited the fact that when the defendant was apprehended, he did not immediately claim to be innocent. His position is that the Constitution requires that a defendant be given the Miranda warnings; that one of those warnings is that the accused has a right to remain silent; that the right would be nullified by allowing proof of the fact that he exercised it. See Miranda v. Arizona, 384 U.S. 436, 468, 86 S.Ct. 1602, 15 L.Ed.2d 694; and see United States v. Brierly, 384 F.2d 992 (3rd Cir.), and Fowle v. United States, 410 F.2d 48 (9th Cir.). In Arizona we have held, in State v. Taylor, 99 Ariz. 85, 90, 407 P.2d 59, 62 (1965):

"* * * the defendant, by testifying, waives his constitutional privilege against self-incrimination and must answer all relevant questions even though they may tend to convict him of the crime for which he is on trial."

■ We are still of the opinion that a defendant who takes the stand waives his Fifth Amendment privilege against self-incrimination, being of the view that the privilege against self-incrimination was designed to avoid the evils arising from star-chamber.

However, we do not rest this case upon disagreement with the conclusions announced in Fowle v. United States, supra. In a subsequent case, involving a similar asserted error, Robideau v. Rhay, 431 F. 2d 880, the Ninth Circuit directed the U. S. District Court to determine whether the error was harmless beyond a reasonable doubt. We think what occurred here was harmless beyond a reasonable doubt.

Defendant was arrested by two F.B.I. agents on the charge of unlawful flight to avoid prosecution. At the trial he was interrogated on cross-examination about what then occurred. These questions were asked, to which he gave these answers:

"Q. What did you do then?

A. Just went with them.

Q. Were you apprised of the charges against you at that time?

A. They didn't tell me the charges * * * I didn't know of no charges. They didn't tell me of no charges. I didn't know what it was, so I wouldn't sign the extradition.

Q. When did you learn of the charges?

A. * * * on the 11th of October.

Q. * * * and what did you do when you learned of the charges?

A. Nothing.

Q. And did you explain to the police where you were on that day?

A. No.

Q. * * * did you explain to the police where you were on the 29th and 28th?"

At this point defendant moved for a mistrial. The motion for a mistrial was denied, but the line of questioning which the prosecution had instigated was not pursued further nor was there any argument made to the jury attempting to draw any inference from the testimony. It is clear that the defendant did not know what the charges were upon being arrested, but that at some later date he did learn. After that, he did not explain to the police where he was on the day of the offense. But so far as the jury was concerned, the defendant was never asked after he learned what the charges were against him.

We are of the opinion, as was the court in Johnson v. People (Colo.), 473 P.2d 974, that the cross-examination does no more than approach the danger point of potential prejudice involving the defendant's Fifth Amendment rights, and conclude the incident was harmless beyond a reasonable doubt.

Judgment affirmed.

HAYS, Vice C. J., and LOCKWOOD, J., concur.