496 P.2d 590

The STATE of Arizona, Appellee,

v.

Belva Jean BELCHER, Appellant.

No. 2126.

Supreme Court of Arizona,
In Division.

May 1, 1972.

Gary K. Nelson, Atty. Gen. by Paul J. Prato, Asst. Atty. Gen., Phoenix, for appellee.

Ross P. Lee, Public Defender by James H. Kemper, Deputy Public Defender, Phoenix, for appellant.

HAYS, Chief Justice.

Defendant, Belva Jean Belcher, was convicted of robbery and assault with a deadly weapon. For these crimes she received consecutive sentences of not less than ten nor more than fifteen years and not less than five nor more than seven years, respectively. She appeals.

The evidence showed that she and a male companion entered an office of the Arizona Public Service Company, where he pointed a gun at the woman behind the counter and ordered her to open the cash drawer. When she did so, defendant came behind the counter and scooped up approximately $900. During the robbery, Raymond Knape, who was seated in his private office, stood up at his desk. When defendant saw him, she told her companion to "[g]et him," whereupon he turned his gun towards Knape and commanded him to sit down. Knape complied, defendant finished emptying the cash drawer, and the two robbers fled.

■ Defendant argues that only one of the charges against her can stand, citing A.R.S. § 13–1641 and State v. Mitchell, 106 Ariz. 492, 478 P.2d 517. Section 13–1641 provides:

"An act or omission which is made punishable in different ways by different sections of the laws may be punished under either, but in no event under more than one. . . . ."

Mitchell prescribes a "practical test" to reveal violations of this statute; namely, to eliminate the elements in one charge, and determine whether the remaining facts [3] will support the other charge. Defendant reasons from these two authorities that if we eliminate the robbery—and with it, the gun—there is no longer any weapon which could form the basis of the charge of assaulting Knape. The argument is specious. The gun is not an element of the charge of robbery. Robbery of the lady in charge of the cash drawer consisted of. taking personal property from her possession or immediate presence, against her will, accomplished by means of force exerted against *her* or fear inspired in *her*. The offense of assault with a deadly weapon against *Knape* took place when defendant's accomplice pointed his gun at *Knape*. Thus, if we remove all of the elements from the robbery charge, we remove the fear inspired *in the lady* by the gun, not the gun itself. There still remains each and every element of the assault charge relating to Knape.

Defendant's argument would mean that if a man walked into an office and shot two persons he could be charged with only one homicide. This obviously is not the law in Arizona.

In State v. Berryman, 106 Ariz. 290, 475 P.2d 472, written just two months before *Mitchell, supra,* by the same Justice, we held that a holdup of a supermarket constituted two robberies, where the robbers took money at gunpoint from two cashiers. Mitchell made no attempt to overrule Berryman.

The Mitchell test was the product of this court sitting in division but it was followed by our full bench. in State v. George, 108 Ariz. 5, 491 P.2d 838. *See also* State v. Andrews, 106 Ariz. 372, 476 P.2d 673, and State v. Gantt, 108 Ariz. 92, 492 P.2d 1199.

■ It is not only clear that a defendant may be charged and convicted of two different crimes, or two counts of the same

crime, but it is also clear that where such a situation exists, he may be given consecutive sentences. State v. Burrell, 106 Ariz. 100, 471 P.2d 712; State v. Bennin, 107 Ariz. 1, 480 P.2d 651.

Defendant also argues that she was denied counsel at her arraignment, in violation of the Sixth and Fourteenth Amendments to the United States Constitution. The transcript of the arraignment, however, makes it abundantly clear that such a denial did not take place. She was offered the services of the Public Defender and refused them. She told the judge that she wanted to be represented by Attorney Henry Florence, but that "[h]e can't represent me today." Mr. Florence was present in the courtroom and stated:

"I have a conflict right now. Another matter which should be disposed of in a few weeks. Then I could represent her. But I cannot represent her now. . . . I explained that to her. . . . If she waives the 60 days, then of course it will be no problem."

The judge indicated that the arraignment could not be postponed for that long, and Mr. Florence suggested that defendant represent herself just at the arraignment. The county attorney was willing to accept a waiver. The judge thereupon questioned her and developed the fact that she was 24 years old and was willing to represent herself at an immediate arraignment. She then pleaded not guilty to all charges and waived the 60 days. It was understood by all parties that this was done so that Mr. Florence could represent her at the proper time in the future.

Thus, while Mr. Florence did not formally represent defendant at her arraignment, he did advise her and was present, and both agreed to the procedure in order that she could gain enough time to free Mr. Florence from his conflicting business.

Defendant contends that the trial court erred by permitting the prosecutor to "impeach her by silence." The transcript shows that at the close of the state's case, defense counsel told the court that approximately five minutes before, defendant had advised him for the first time that she just remembered that she was in Texas at the time of the robbery. Despite the lack of any notice to the prosecution, the court allowed the defense to call defendant's aunt to testify that defendant was in Texas during the whole month of February. (The robbery took place on February 12). After that witness left the stand, defendant testified, in corroboration, to substantially the same facts. On cross-examination, the prosecutor asked her:

"Did you at any time tell any of the police officers . . . that you were in Texas . . . at the time this robbery occurred?"

To this question, defendant answered: "I don't recall." Defense counsel then moved for a mistrial on the ground that defendant had a constitutional right to remain silent, that the prosecution had no right to comment on it, and that the question in effect permitted an impermissible inference that if the alibi had been true, defendant would have disclosed it to the police. The trial court refused to declare a mistrial but admonished the jury to ignore the question.

In State v. Altman, 107 Ariz. 93, 482 P.2d 460, the same situation arose, and we held that the question was "not improper," and that since it was not answered it could not have been prejudicial. Shortly thereafter, the same question was again before us in State v. Peterson, 107 Ariz. 268, 485 P.2d 1158. We there held that a defendant who takes the stand waives his Fifth Amendment privilege against self-incrimination, that what had occurred was harmless beyond a reasonable doubt, and that this line of questioning "does no more than approach the danger point of potential prejudice involving defendant's Fifth Amendment Rights."

Defendant's last contention is that she was placed in a lineup without having been given a chance to retain an attorney. It is her position that the cases of United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 and Gilbert v. Cali-

fornia, 388 U.S. 263, 87 S.Ct. 1951, 18 L. Ed.2d 1178, hold that a lineup is a critical stage of the proceedings and that an accused is therefore entitled to a lawyer at that point. The principal arguments in the briefs of the defendant and the State are concerned with whether those two cases apply to lineups which take place before the indictment is brought in or the complaint filed. In our view of the case, we need not resolve that argument, as it is our opinion that *Wade* and *Gilbert* do not in any way apply to the instant case.

Mrs. Bokemeier, the A.P.S. employee who was robbed, was shown pictures at various times by the police in an effort to identify the robber. She was not able to make a positive identification but did on at least one occasion state that one picture looked very much like the woman who took the money. That picture was of defendant's sister, Pearline Belcher, who was then arrested and taken to the jail. *The police arranged a lineup to see if Mrs. Bokemeier could pick out Pearline.*

Just how defendant came to appear in Pearline's lineup is in dispute. Two police officers testified that she insisted upon being in any lineup arranged for Pearline, and they granted her request. Defendant tells a different story. She testified that:

> "My sister was arrested for this case and she was booked in the jail. She had a city charge. Monty and I were down to the City Court. I come outside and got some water, and Flores and Flores' partner [the arresting officers] were out there. . . . And they told me they want to put me in a lineup with my sister. I told them Okay."

Regardless of whose version is used, three facts stand out: (1) defendant was not then in custody, (2) this was not a lineup connected with any charge against her, and (3) she took part in the lineup voluntarily. It is admitted that she was not told that she had a right to have a lawyer. Despite *Wade* and *Gilbert, supra,* it is obvious that she had no such right. Those cases give the right to counsel, to an accused *for his own lineup,* in order to insure that the lineup is not rigged or suggestive. A casual visitor in the building on other business, who voluntarily agrees to appear in a lineup, has no right to counsel. She has a larger right—the right to refuse to appear in the lineup at all. *Because she may refuse to appear* at all, *she has no need for counsel.* If the lineup is rigged to induce identification of the *accused,* unfair though that may be to the *accused,* there is no unfairness towards the *volunteer.* The lineup, far from being a critical stage in the proceedings against the defendant, was no part of any proceedings against the defendant, because no proceedings of any kind were in progress against her. There is no claim that the lineup was a fake, instituted to induce defendant to appear in it in order to get the complaining witness to identify the *defendant.*

The record contains a photograph of the lineup. It contains defendant, her sister Pearline, and two other women of the same approximate height, weight and ethnic type. They were lined up and came to a small window one at a time to show front and profile views of themselves. The complaining witness testified that she recognized defendant immediately, but waited until defendant came to the window before telling the police that the defendant was the person who robbed her. The witness stated that she was within one foot of defendant at the time of the robbery and got a very good look at defendant. Nothing suggestive about the lineup has been pointed out.

Defendant's alibi was completely demolished by the introduction of pay checks for the first three weeks of February (two before and one after the date of the crime) which convinced the jury that defendant was working in Phoenix and was not in Texas as she and her aunt had claimed.

For all of the above reasons, the judgment of the superior court is affirmed.

STRUCKMEYER and HOLOHAN, JJ., concur.