509 P.2d 698

**The STATE of Arizona, Appellee,**

v.

**William SHING, Appellant.**

**No. 2291.**

Supreme Court of Arizona,
In Division.

May 7, 1973.

Gary K. Nelson, Atty. Gen., Phoenix, by William P. Dixon, Asst. Atty. Gen., and Albert M. Coury, Former Asst. Atty. Gen., for appellee.

Ross P. Lee, Maricopa County Public Defender, by James H. Kemper, Deputy Public Defender, Phoenix, for appellant.

CAMERON, Vice Chief Justice.

This is an appeal from a judgment of guilty to the crime of transportation of marijuana, § 36–1002.07 A.R.S., and a sentence thereon of from ten years to life imprisonment.

We are asked to answer the following questions on appeal:

1. Does the evidence support conviction for transportation of marijuana?

2. Was the sentence imposed on defendant based upon an invalid admission of an allegation of a prior conviction?

3. Did the prosecutor commit reversible error in his comments to the jury during closing argument?

The facts necessary for determination of the matter on appeal are as follows. In the morning of 27 August 1970, Mr. Settle, manager of the Chandler Municipal Airport, observed a plane land and taxi to an unusual parking place. The pilot of that plane, a Piper Aztec, was met shortly thereafter by a second man, later identified as the defendant Shing, driving a station wagon. The two men left the airport in the station wagon but returned some time later. The two men seemed to be watching the horizon for something. When the two men again left the airport, Mr. Settle walked out to the Aztec and thought it smelled of marijuana. This caused him to call the Sheriff's office.

Several detectives arrived and set up a surveillance. At that time the two men had returned to the airport and took off in the Aztec, leaving the station wagon at the airport. In the station wagon were several plastic containers of what smelled like aviation fuel.

At about 7:30 p. m., the Aztec returned and the two men were seen close to the Aztec, apparently waiting for something. About thirty minutes later, there was the sound of another aircraft. The Aztec took off and the station wagon began to leave with its lights off. The detectives observed the driver of the station wagon and later identified him as the defendant. At that time, another airplane made a very low pass over the field. The detectives followed the two planes by the navigational lights of the Aztec and the noise of the other plane. When the planes reached the South Mountain area of Phoenix, they appeared to descend.

The detectives proceeded to the Stellar City Airport, but the two planes were not there. Next, they proceeded to the Goodyear auxiliary strip, which had once been used by the Air Force but was now abandoned. There they found the Aztec, another plane, a ten passenger Dehaviland

Dove, and the station wagon. The defendant Shing was found sitting in the station wagon and was arrested. The others fled and were not apprehended at that time.

The door of the Dehaviland was open and it could be seen that it contained a number of boxes. One of these had broken open and several smaller packages were lying on the floor. It was apparent that these smaller packages were similar to packages containing kilos of marijuana. There were seeds, stems, and leaves of marijuana on the floor of the Dehaviland. The officers noticed a strong odor of marijuana coming from the aircraft. The Dehaviland contained some 2600 pounds of marijuana. After being warned of his "Miranda" rights, Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), including the right to remain silent, the defendant was questioned concerning his presence at the airstrip and the identity of his companion. The defendant refused to respond to their questions.

At the trial Mr. Shing testified that he had no idea that the plane contained marijuana. He stated that he was offered $500 (one detective stated that Mr. Shing said $1000) to accompany a friend on a business trip. Mr. Shing claims that he was only following instructions and that he was supposed to put fuel into the Dehaviland. He refused to disclose the identity of this friend at the trial claiming his life would be endangered if he did.

## DOES THE EVIDENCE SUPPORT CONVICTION FOR TRANSPORTATION OF MARIJUANA?

Mr. Shing was convicted of violating § 36–1002.07 A.R.S., which provides in part: "Every person who transports * * * marijuana shall be punished by imprisonment in the state prison * * *."

Defendant contends that he was an innocent bystander, that he had no knowledge of the illegality of the transaction, and there was no evidence he knew that the plane contained marijuana or that he knew that the substance in fact was marijuana,

and thus it was error to deny his motion for a directed verdict.

Defendant relies on Carroll v. State, 90 Ariz. 411, 368 P.2d 649 (1962) which said:

> "Mere presence at the scene of a crime is insufficient to establish guilt. In cases where the narcotic was found in a public place and conviction was sustained, there was involved a factor connecting the accused with the narcotic, independent of his presence at or near the location where the drug was found * * *." (Footnote omitted) 90 Ariz. at 413, 368 P.2d at 650.

In Carroll, supra, we were dealing with narcotics found in a public place accessible to many people other than defendant. In the instant case, we have a defendant who was paid a high salary to rent a car, drive in the dark of night to an abandoned airstrip to put gas into another airplane when that plane could have easily refueled at several other convenient locations in the area. Defendant was the only person present when arrested at the scene with some 2600 pounds of marijuana. Testimony indicated that the plane was loaded with boxes of marijuana in smaller packages, that the marijuana was visible inside the door of the plane, that the marijuana had a strong odor to it because it was damp. These circumstances strongly infer that defendant knew that some illegal activity was in progress and that there was ample evidence to support the conviction of transporting marijuana.

The best defendant could hope for at common law would be to be classified as a principal in the second degree. See Perkins on Criminal Law, 2d ed. at page 658. Arizona, however, has abolished the common law distinctions between degrees of principals and accessories before the fact. § 13-137, et seq., A.R.S. And further:

> "All persons concerned in the commission of a crime whether it is a felony or misdemeanor, and whether they directly commit the act constituting the offense, or aid and abet in its commission, or, not being present, have advised and encouraged its commission, * * * are principals in any crime so committed." § 13-139 A.R.S. See also § 13-140 A.R.S.

## WAS THE SENTENCE IMPOSED ON DEFENDANT BASED UPON AN INVALID ADMISSION OF AN ALLEGATION OF A PRIOR CONVICTION?

The defendant next claims that his sentence was based upon an invalid admission of an allegation of a prior conviction. He argues that since the admission is constitutionally void on its face, it is necessary to vacate his sentence. We do not, however, need to consider the validity of the prior conviction. Although there was an addendum to the information which alleged a prior conviction pursuant to § 13-1650 A.R.S. for robbery in the State of California and the minute entry of the plea while showing a plea of not guilty to the crime as charged also shows "defendant admits allegation of prior conviction," the judgment of guilt was for the crime as charged only and the record does not reflect a judgment of guilt as to the prior conviction.

[2] Since the sentence imposed is within the statutory limits for transporting marijuana without a prior conviction, we cannot find any abuse of discretion in imposing sentence particularly considering the amount of marijuana involved. See State v. Smith, 107 Ariz. 218, 484 P.2d 1049 (1971); State v. Carpenter, 105 Ariz. 504, 467 P.2d 749 (1970).

## DID THE PROSECUTOR COMMIT REVERSIBLE ERROR IN HIS COMMENTS TO THE JURY DURING CLOSING ARGUMENT?

At the trial on cross-examination by defendant's attorney, one of the sheriff's deputies was asked the following after stating that defendant had explained and read to him his rights from a "standard rights card":

> "I asked him if he wanted to talk to us. He said, 'Yea.'

"I told who I was naturally. I asked him how many people were there—originally were there. He didn't want to discuss that. I asked him if he wanted to tell me who it was. He said, 'No.' Later, Detective Lines returned with what we thought was a suspect, and I asked Mr. Shing if he would look at this person and identify him. He said, 'No.'"

Later the defendant took the stand and testified in his own behalf. On cross-examination he was asked:

"Q This person who hired you to make this business trip with him has a name, does he not?

"A Yes.

"Q You have never told anyone who this person was before, have you?

"A No.

\* \* \* \* \* \*

"Q Well, Mr. Shing, you have testified this morning that you knew this person for 10 years, and you were hired by this person to make a trip to Phoenix, and you were going to be paid for it. Can you tell who this person is?

"A Like I said, the reason why I didn't mention the name because I am afraid because the Sheriff's department advised me—told me earlier that my life in dangerous and at the same time after awhile I got to thinking, not only my life would be in dangerous but my family life would be in dangerous, too."

In his closing argument the prosecutor commented:

"Perhaps, the most significant thing about \* \* \* Mr. Shing's behavior was his silence. He had an opportunity to explain his presence at the airstrip. He didn't do so. He had an opportunity to identify someone else who might or might not be involved. The officers didn't know. He didn't know, but Mr. Shing did not avail himself of that opportunity."

Defendant asserts for the first time on appeal that the comments of the prosecutor on defendant's silence after arrest punish him for exercising his right to remain silent. Defendant relies on Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L. Ed.2d 106 (1965), and two Arizona cases, State v. Simoneau, 98 Ariz. 2, 401 P.2d 404 (1965) and State v. Villalobos, 6 Ariz.App. 144, 430 P.2d 723 (1967).

We are not here concerned with comment upon defendant's testimony at trial. Since the defendant chose to take the stand and testify, his testimony including his refusal on the stand to name the person who hired him was certainly a proper subject for comment by the prosecutor in his remarks to the jury.

We are, however, concerned with the comments of the prosecutor as they pertain to actions of the defendant after his arrest and Miranda warnings, Miranda v. Arizona, supra, in remaining silent and in refusing to name the people with him or to identify the person shown to him. We have stated:

"We \* \* \* do not approve the introduction of evidence of an accused's silence in reply to questions when he is in custody or under other circumstances where it is his constitutional right to refrain from incriminating himself under the Fifth Amendment to the Constitution of the United States." State v. Simoneau, supra, 98 Ariz. at 6, 401 P.2d at 407.

The federal courts have stated:

"\* \* \* after the arrest and during an official examination, while respondent is in custody, it is common knowledge that he has a right to say nothing. Only under peculiar circumstances can there seem to be any duty then to speak. Lacking such circumstances, to draw a derogatory inference from mere silence is to compel the respondent to testify; \* \* \*." McCarthy v. United States, 25 F.2d 298, 299 (6th Cir. 1928); United States v. Pearson, 344 F.2d 430, 431 (6th Cir. 1965). See also People v. Cockrell,

---

63 Cal.2d 659, 47 Cal.Rptr. 788, 408 P.2d 116 (1965).

To hold that a defendant may, after being warned of his right to remain silent, have that silence used against him would nullify the warning required by Miranda, supra, and the warning would have to be amended to inform the defendant that not only what he says may be used against him, but what he doesn't say will also be used against him. We have stated:

> "Whether a case in which the accused does not initiate the conversation, but responds to several questions, then lapses into silence when asked an embarrassing question falls into the same category is much more doubtful. In such a case it generally would not be as 'natural' that the accused respond to an embarrassing question. It is much more likely that he is simply asserting his right to remain silent. Thus we limit our holding that an admission by silence can be admissible evidence to the facts of the case before us. * * *." State v. O'Dell, 108 Ariz. 53, 56, 492 P.2d 1160, 1163 (1972).

And we believe that it was fundamental error which was not waived by the failure of the defendant to object when the prosecutor commented upon defendant's silence after arrest.

Under the facts in this case, however, we believe that said comments were harmless beyond a reasonable doubt. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L. Ed.2d 284 (1969). Considering the position in which defendant was found—two airplanes, one with 2600 pounds of marijuana, the aviation fuel, the abandoned airstrip—any such comment is most surely harmless beyond a reasonable doubt.

Judgment affirmed.

HOLOHAN, J., concurs.

JACOBSON, Chief Judge Division 1, Court of Appeals (specially concurring):

I concur that the defendant's conviction and sentence in this case must be affirmed. Since I concur in the result of this Court, this concurring opinion shall only deal with the area upon which I disagree with the majority in reaching that result.

The majority has concluded that the prosecutor's comment in closing argument to the jury upon the defendant's silence after arrest was "fundamental error which was not waived by the failure of the defendant to object . . . ." It is with this statement that I disagree.

In order to place this issue in proper perspective it is necessary to review how the factual basis for the prosecutor's closing argument came into evidence. The first reference to the defendant's refusal to answer questions asked of him by law enforcement officers came during cross examination by the defendant's counsel. If it is error to inquire into the area of the defendant's Fifth Amendment rights to remain silent, this error was created by the defendant. This Court has repeatedly held that a defendant may not create error in the trial court and then rely on that created error on appeal. State v. Arriola, 99 Ariz. 332, 409 P.2d 37 (1965); State v. Farmer, 97 Ariz. 348, 400 P.2d 580 (1965); State v. Rascon, 97 Ariz. 336, 400 P.2d 330 (1965); State v. Paramo, 92 Ariz. 290, 376 P.2d 554 (1962). The subject matter of defendant's silence not being erroneously before the jury, the prosecutor is granted wide latitude in discussing with the jury the facts supplied by the evidence and the inferences to be drawn therefrom. State v. Gonzales, 105 Ariz. 434, 466 P.2d 388 (1970); State v. Adams, 1 Ariz.App. 153, 400 P.2d 360 (1965). Based upon the manner in which this issue arose in the trial court, I would hold this error, if it be error, is not reviewable.

There is, however, a more fundamental difference existing between myself and the majority on this issue than the mere procedural manner in which this claimed error arose. This fundamental difference arises where the defendant waives his Fifth Amendment privilege against self-incrimination by taking the

stand in his own behalf, and is subsequently cross-examined concerning his failure to make known to arresting officers the story or explanation he has given from the stand and the subsequent comment to the jury concerning this silence, constitutes error at all, let alone fundamental error.

I first note that this Court has held that cross examination of the testifying defendant concerning whether he related to police officers the same story he told from the stand is not improper. State v. Altman, 107 Ariz. 93, 482 P.2d 460 (1971). Again, I would hold that if a defendant can be examined concerning his constitutional right to remain silent, this is a proper subject of comment to the jury in closing argument.

At this juncture, however, the majority opinion would draw a distinction between commenting by the prosecutor on defendant's testimony on the stand as being proper comment and comments by the prosecutor "as they pertain to the actions of the defendant after his arrest and Miranda warnings [citations omitted] in remaining silent and refusing to name the people with him or to identify the person shown to him" which is improper. I am unable to draw such a fine distinction. In both instances the conduct consists of remaining silent after arrest—on the one hand refusing to identify suspects and explain his presence at the scene and on the other hand refusing to identify his employer who for all we know may have been the individual the defendant was asked to identify at the scene.

Be that as it may, the attempt to make this distinction serves to place in proper focus the reason both cross-examination of the defendant and the testimony of the law enforcement officer are proper comment by the prosecutor—the fact that the defendant waives the Fifth Amendment right to remain silent by taking the stand in his own behalf.

This singular fact is absent in all the cases cited by the majority, except the case of People v. Cockrell, 63 Cal.2d 659, 47 Cal.Rptr. 788, 408 P.2d 116 (1965), cert.

denied, 389 U.S. 1006, 88 S.Ct. 568, 19 L. Ed.2d 604 (1967) (but even this case does not raise the issue to one of fundamental error), or the "admission by silence" was attempted to be introduced by the prosecutor in the case in chief. See, Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965); State v. O'Dell, 108 Ariz. 53, 492 P.2d 1160 (1972); State v. Simoneau, 98 Ariz. 2, 401 P.2d 404 (1965); State v. Villalobos, 6 Ariz.App. 144, 430 P.2d 723 (1967); McCarthy v. United States, 25 F.2d 298 (6th Cir. 1928); United States v. Pearson, 344 F.2d 430 (6th Cir. 1965).

In the three Arizona cases where the "admission by silence" occurred after the defendant took the stand, this Court has consistently held that "a defendant who takes the stand waives his Fifth Amendment privilege against self-incrimination, being of the view that the privilege against self-incrimination was designed to avoid the evils arising from the star-chamber." State v. Peterson, 107 Ariz. 268, 485 P.2d 1158 (1971); State v. Belcher, 108 Ariz. 290, 496 P.2d 590 (1972). Also see, State v. Alterman, supra.

Objectively, it should be pointed out that in all three of these cases the Court held that if such admission were error, the error was not prejudicial and as stated in Peterson, supra, and in Belcher, supra, the line of questioning, that is, the admission by silence "does no more than approach the danger point of potential prejudice involving defendant's Fifth Amendment rights," at least indicating that there is a line which, if crossed, could result in prejudicial error. This statement, however, in my opinion, was made without the complete analysis of the Fifth Amendment right and its use as an impeachment tool when the defendant takes the stand. I am also aware of the case of State v. Greer, 17 Ariz.App. 162, 496 P.2d 152 (1972), where Division Two of the Court of Appeals held that cross-examination of the defendant concerning his silence at the time of arrest, was reversible error. But see dissenting opinion of Judge Haire in

that case. 17 Ariz.App. at 165–167, 496 P. 2d at 155–157.

In my opinion, a correct understanding of this problem must begin with a review of three United States Supreme Court decisions, Raffel v. United States, 271 U.S. 494, 46 S.Ct. 566, 70 L.Ed. 1054 (1926); Grunewald v. United States, 353 U.S. 391, 77 S.Ct. 963, 1 L.Ed.2d 931 (1957), and Harris v. New York, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971).

In *Raffel, supra,* the defendant at his first trial exercised his Fifth Amendment right and did not take the stand in his own behalf to deny testimony introduced against him. A subsequent appeal and reversal resulted in a new trial. At the second trial the defendant did testify and denied the incriminating evidence. At this second trial the defendant was cross examined as to his exercise of his Fifth Amendment right not to testify in his own behalf in an attempt to impugn the credibility of his denial at the second trial. The United States Supreme Court upheld this cross-examination, holding that when a criminal defendant takes the stand he waives his privilege completely and becomes subject to cross-examination impeaching his credibility just like any other witness. The *Raffel* court stated:

"His waiver is not partial; having once cast aside the cloak of immunity, he may not resume it at will, whenever cross-examination may be inconvenient or embarrassing." 271 U.S. at 497, 46 S.Ct. at 568, 70 L.Ed. at 1058.

In *Grunewald, supra,* the United States Supreme Court reviewed its ruling in *Raffel, supra,* and refused to overrule it, stating:

"In other words, we may assume that under Raffel [the defendant] in this case was subject to cross-examination impeaching his credibility just like any other witness, and that his Fifth Amendment plea before the grand jury could not carry over any form of immunity when he voluntarily took the stand at the trial." 353 U.S. at 420, 77 S.Ct. at 982, 1 L.Ed.2d at 952.

The Court went on to state:

"This does not, however, solve the question whether in the particular circumstances of this case the cross-examination should have been excluded because [of] its *probative value on the issue of [defendant's] credibility.* . . ." (Emphasis added.) Id., *supra.*

A majority of the Court refused to base a reversal upon the constitutional issue that "the value of constitutional privileges is largely destroyed if persons can be penalized for relying on them." Concurring opinion of Mr. Justice Black in Grunewald v. United States, 353 U.S. at 425, 77 S.Ct. at 984, 1 L.Ed.2d at 954. In other words, the issue becomes one of materiality of evidence rather than an infringement of constitutional rights.

In *Harris, supra,* the United States Supreme Court reinforced its prior decision in *Grunewald, supra,* that the probative value of the cross-examination is the test, not the infringement of constitutional rights. In *Harris, supra,* the defendant gave statements to police under circumstances not conforming with the dictates of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974 (1966).

The defendant took the stand and made statements inconsistent with his prior nonconforming statements. The prosecutor was allowed to impeach the defendant by the use of his prior statements. In upholding this practice against a constitutional attack, the Court held that:

"It does not follow from Miranda that evidence inadmissible against an accused in the prosecution's case in chief is barred for all purposes, *provided of course that the trustworthiness of the evidence satisfies legal standards.*" (Emphasis added.) 401 U.S. at 224, 91 S.Ct. at 645, 28 L.Ed. at 4.

The United States Supreme Court further stated:

"Having voluntarily taken the stand, petitioner was under an obligation to speak truthfully and accurately, and the prosecution here did no more than utilize

the traditional truth-testing devices of the adversary process." 401 U.S. at 225, 91 S.Ct. at 645–646, 28 L.Ed.2d at 4.

In the case before the Court, I need not reach a determination as to whether the defendant's refusal to explain his presence at the scene or identify the supposed cohort was of sufficient probative value to put in question the defendant's credibility, for no objection was made to this testimony nor was objection made to the prosecutor's argument on this point to the jury. One thing I would decide, however, is that under the rationale of *Raffel, supra, Grunewald, supra,* and *Harris, supra,* this error, if any, is evidentiary error and not fundamental (constitutional) error as contended by the majority and was therefore waived by failure to object. *See,* State v. Coward, 108 Ariz. 270, 496 P.2d 131 (1972); State v. Mohr, 106 Ariz. 402, 476 P.2d 857 (1970); State v. Gregge, 13 Ariz.App. 185, 475 P.2d 277 (1970).

I join in the majority's affirmance of the defendant's conviction and sentence with the reservations herein expressed.