512 P.2d 613

**STATE of Arizona, Appellee,**

v.

**Robert Austin ANDERSON, Jr.,
Appellant.**

**No. I–CA–CR 506.**

Court of Appeals of Arizona,
Division 1, Department B.

July 31, 1973.

Rehearing Denied Sept. 5, 1973.

Review Granted Oct. 16, 1973.

Gary K. Nelson, Atty. Gen. by Thomas A. Jacobs, Asst. Atty. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender by Anne Kappes, Deputy Public Defender, Phoenix, for appellant.

JACOBSON, Chief Judge of Division One.

The defendant, Robert Austin Anderson, Jr., has, after a jury trial, appealed his judgment of conviction and sentence to prison for burglary and grand theft.

Since the defendant does not question the sufficiency of the evidence to sustain the jury's verdict of guilty (and our review of the evidence affirms that sufficiency), we set out only those facts which are necessary to decide the issues raised.

The State in its case in chief called as a witness, Edward Ingalls, to prove the guilt of the defendant. Ingalls testified that on the evening of August 13, 1971, he accompanied the defendant to the defendant's former residence at 1643 North Markdale, Mesa, Arizona; that he observed the defendant open a window, enter the house through that window and then let Ingalls in the front door. Ingalls then identified certain cameras stolen from the house and specifically testified that the defendant had removed these from the home. Further, Ingalls testified that his purpose in accompanying defendant to the house was to assist in removing some personal property which the defendant said he had left in the house. Ingalls then testified that the following day he and the defendant went to Ken's Cash Box where the defendant sold the cameras in question for $50.00, Ingalls receiving $25.00 and the defendant keeping $25.00. While in the State's case in chief he denied any prior knowledge of the defendant's actions and maintained that his presence at the Mesa residence was completely innocent, Ingalls did acknowledge that at the preliminary hearing he testified he took one camera from the house and the defendant took the other. Further, on cross-examination he testified:

"Q. Isn't it true that you entered a plea of guilty to one count of burglary and one count of grand theft and that you were sentenced on those?

"A. Yes, sir.

"Q. You pled guilty but you're trying to tell this court here today and jury that you didn't know anything about it?

"By the way, what was your sentence?

"A. A year's probation.

The court instructed the jury generally on the necessity for corroboration of the testimony of an accomplice in order to convict, the definition of an accomplice and "whether any witness in this case was an accomplice is for you to determine." No objection was made to this instruction nor did the defendant make any request that the court instruct the jury that Ingalls was an accomplice as a matter of law.

The defendant took the stand in his own behalf and testified that he lived at the residence in question and that the other residents of the house had been picked up by the police; that when he went back to the house he found it locked and that he only entered the home for the purpose of retrieving certain personal items that belonged to him. He further testified that he only removed those items which belonged to him and the first knowledge he had of the cameras was when Ingalls showed them to him after leaving the house. During cross-examination of the defendant the prosecutor asked the following question:

"Q. Have you told this story to anyone before today?

"A. No, I haven't."

In closing argument, the prosecutor referred to this cross-examination of the defendant as follows:

"Then for the first time we hear from the defendant. Then the defendant told his story. He told it for the very first time at this trial. Since this was the first time he told the story, unlike Mr. Fischer vis-a-vis Mr. Ingalls, when he had him on the stand we did not have impeachment matters, we didn't have a transcript whereby we could impeach the defendant. This is the first time he told his story."

"He waited until now to tell this story."

No objection was made either to the above cross-examination or closing argument. Again, in the State's case in chief, the State was allowed over objection, to

recall the owner of the cameras to testify as to their value. This value was primarily based upon what a dealer in cameras had told the owner their value was. A motion to strike this testimony was denied.

The defendant raises the following issues on appeal:

1. Under the state of the evidence, did the trial court have a duty, *sua sponte,* to instruct the jury that Ingalls was an accomplice as a matter of law?

2. Was the prosecutor's cross-examination and jury argument directed to the defendant's pretrial silence reversible error?

3. Did the trial court properly instruct the jury on the issue of intent necessary for the crime of burglary?

4. Was the testimony of the owner of the stolen cameras as to their value admissible?

 The defendant's first contention is based upon the proposition that where the evidence is clear and undisputed that a witness's participation in the crime for which the defendant is charged is such that the witness could be prosecuted for the same crime, it is for the court to determine whether that witness is an accomplice as a matter of law. This is undoubtedly a correct statement of the law. Cruz v. State, 40 Ariz. 436, 14 P.2d 247 (1932). It is equally correct that where, although there is evidence to connect the witness with the crime, the facts are disputed or susceptible to different inferences, the question as to whether that witness is an accomplice is for the jury to determine. Cruz v. State, *supra.* This case raises the interesting question of whether a witness's denial of criminal participation in the event coupled with his prior judicial plea of guilty to the crime arising out of that same event raises a disputed issue of fact as to the witness's status as an accomplice. The only case the court has been able to locate dealing with this specific problem is Hargrove v. State, 125 Ga. 270, 54 S.E. 164 (1906), which held:

"The jury had the right to accept as true the account given by [the witness] of the homicide and the circumstances leading up to and attending it; in which event he was not an accomplice. The only evidence which connected the witness with the homicide was his alleged admission of it and his conviction of the same murder. The witness denied he ever admitted killing the deceased. So the whole matter is resolved into the effect of his admission of having pleaded guilty to the indictment. . . . As between the state and the witness, his plea of guilty is conclusive of his guilt as a principal; but as between the state and the defendant on trial, it cannot be more effectual against the state than it would be against the defendant, and clearly he [the defendant] would not be bound by the plea."

\* \* \* \* \* \*

"The plea of guilty of the witness to the indictment may properly be considered by the jury in determining whether the witness was an accomplice, but the plea is not conclusive on this point [citation omitted]. Therefore, the judge properly left it for the jury to decide whether under the evidence the witness was an accomplice."

 We believe the holding in Hargrove v. State, *supra,* is sound. Pleas of guilty may be entered for a number of reasons some unrelated to the issue of true guilt. *See,* North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). Moreover, a plea of guilty even as between the state and the witness may not be conclusive. *See,* Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).

 We therefore hold that the trial court properly submitted to the jury the issue of whether Ingalls was an accomplice. Having made this determination we do not decide what effect, if any, the failure of the defendant to object to the submission of this instruction to the jury may have.

The second issue raised by the defendant is that, even absent objection, the defendant may not be cross-examined concerning whether or not he had previously made known the story he now tells from the stand, citing State v. Greer, 17 Ariz.App. 162, 496 P.2d 152 (1972). How we decide this issue requires us to determine which of two conflicting holdings of the Arizona Supreme Court apply. In the case of State v. Shing, 109 Ariz. 361, 509 P.2d 698 (1973), decided May 7, 1973, the court, sitting in division, held on the issue of pretrial silence by the defendant that:

> "To hold that a defendant may, after being warned of his rights to remain silent, have that silence used against him would nullify the warning required by Miranda, supra, and the warning would have to be amended to inform the defendant that not only what he says may be used against him, but what he doesn't say will also be used against him.

> \* \* \* \* \* \*

> "And we believe that it was fundamental error which was not waived by the failure of the defendant to object when the prosecutor commented upon defendant's silence after arrest." (But See, concurring opinion by this author in State v. Shing, 109 Ariz. 361, 509 P.2d 702–704).

On June 12, 1973, the Supreme Court, sitting in banc, in an unanimous opinion (including the two justices who comprised the majority in State v. Shing, *supra*), in the case of State v. Benton, 109 Ariz. 427, 510 P.2d 743 held:

> "The defendant also claims that certain questions asked him during cross-examination and several statements made by the prosecutor during closing arguments constituted reversible error, even though not objected to at the time.

> "The arresting officers testified that they merely served the warrant upon the defendant telling him it was for robbery and he said he was not involved in any robbery. *The prosecutor asked him if he had told this to anyone else and he replied that he had not.* No objection was

made to this line of questioning and we cannot see that it raises any question of fundamental error." (Emphasis added)

In support of this holding the Supreme Court cited the case of State v. Jackson, 201 Kan. 795, 443 P.2d 279 (1968), cert. denied, 394 U.S. 908, 89 S.Ct. 1019, 22 L. Ed.2d 219 (1969). In *Jackson,* the defendant took the stand and gave testimony which would completely exonerate him of the criminal charges against him. On cross-examination he was asked if he had made such a statement before trial. This cross-examination was made the subject of comment by the prosecutor in his closing argument.

The Kansas Supreme Court held:

> "When a defendant takes the stand as a witness, he takes his integrity and character with him and he cannot complain because he is subjected to the same inquiries and tests as other witnesses. The extent to which he may be cross-examined lies largely in the discretion of the trial court. [citations omitted]

> \* \* \* \* \* \*

> "The appellant told a story which kept him away from the immediate scene of the crime. If the story was believed by the jury an acquittal would necessarily result.

> "The state had the right to test the credibility of the witness and impeach the testimony. . . . The question immediately arose—if the appellant had such a positive defense why had he not so informed the law enforcement officers during or after his arrest? Normally an innocent man would take the first opportunity to state the fact. Silence until the time of trial casts a serious doubt upon the appellant's testimony and the state had a right to refute any reason he gave for his claimed abnormal conduct.

> \* \* \* \* \* \*

> "The matter being a proper subject for cross-examination, it was also a proper subject for comment by the prosecuting attorney in his closing argument."

It would appear that the Arizona Supreme Court's approval of the *Jackson* rationale, being both the latest pronouncement by that court and consisting of a unanimous decision of the entire court, is binding on this court. McKay v. Industrial Commission, 103 Ariz. 191, 438 P.2d 757 (1968). We therefore hold that the failure of the defendant to object to either the cross-examination or the argument of the prosecutor as to his pretrial silence waives his right to raise this non-fundamental error, if any, on appeal. State v. Benton, *supra*.

The third issue raised by the defendant is the failure of the trial court to instruct the jury on the intent necessary to constitute the crime of burglary. The court instructed the jury as follows:

> "A person entering a building, dwelling house, or apartment with intent to commit grand or petty theft, or any felony, is guilty of burglary."

The court further instructed the jury on the elements of grand and petty theft. This instruction is a correct statement of the law, A.R.S. § 13–302, and adequately informs the jury of the intent necessary to constitute the crime of burglary. We find the defendant's contention on this issue without merit.

The final issue raised by the defendant is the admissibility of the evidence as to the value of personal property by the owner of that property, where that opinion is based upon hearsay. The defendant contends that the owner's opinion as to the value of the cameras was based entirely upon what was told him by a dealer. This is not entirely true; the owner testified as to the amount he paid for each of the items and further described the cameras to a dealer in rather great detail as to their condition and type and obtained from the dealer an estimate as to their value. Moreover, when we analyze the type of testimony we are dealing with in connection with value, that is, opinion testimony, defendant's objection as to hearsay would appear unfounded. It has long been held

in Arizona that opinion testimony as to value by an owner is admissible. State v. Cope, 7 Ariz.App. 295, 438 P.2d 442 (1968). It would further appear that it would be a rare case that this opinion would not be based on hearsay. We therefore hold that where the owner's opinion as to value of personal property is based partially on hearsay, the question of what weight that opinion is to be given is for the jury, but does not affect its admissibility.

For the foregoing reasons the judgment of conviction and sentence of the defendant are affirmed.

EUBANK, P. J., and HAIRE, J., concur.