517 P.2d 508

**The STATE of Arizona, Appellee,**

**v.**

**Robert Austin ANDERSON, Jr., Appellant.**

**No. 2813–PR.**

Supreme Court of Arizona,
In Banc.

Dec. 20, 1973.

Gary K. Nelson, Atty. Gen. by Thomas A. Jacobs, Asst. Atty. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender by Anne Kappes, Deputy Public Defender, Phoenix, for appellant.

CAMERON, Vice Chief Justice.

We granted the defendant Anderson's petition to review a decision and opinion of the Court of Appeals, 20 Ariz.App. 309, 512 P.2d 613 (1973), in order that we might consider only one question: Was the prosecutor's jury argument directed to defendant's pretrial silence fundamental error? As to the other questions raised by the defendant, the opinion of the Court of Appeals in State v. Anderson, supra, is approved.

At the trial the defendant took the stand and testified in his own behalf, disclaiming any guilty intent in entering the house in question and inferring that an accomplice was the guilty party. During the cross-examination of the defendant, the prosecutor asked the following questions:

"Q Now, it was your testimony today that you weren't upset that you only got $50.00 for the cameras, is that correct?

"A That's correct.

"Q Have you told this story to anyone before today?

"A No, I haven't.

"Q Where was the car parked at the time the boxes were loaded into it at 1643 N. Markdale on the evening August 12th?"

In closing argument, the prosecutor referred to this cross-examination of the defendant as follows:

"After Detective Sterling testified, the State rested. Then for the first time we hear from the defendant. Then the defendant told his story. Since this was the first time he told the story, unlike Mr. Fischer vis-a-vis Mr. Ingalls, when he had him on the stand we did not have impeachment matters, we didn't have a transcript whereby we could impeach the defendant. This is the first time he told his story. * * *"

And later:

"I submit to you that the defendant's story on the stand is simply not worthy of your belief. He waited until now to tell this story. He sat here throughout this trial and listened to everybody testify here, everybody who came in here, who was excluded from this courtroom came in and testified, and he had an opportunity to listen to what everybody said up there, and he gets up there, and what he really says is ladies and gentlemen of the jury, I admit I knew it was stolen, but the State charged me with the wrong crime. * * *"

No objection was made either to the cross-examination or closing argument.

The Court of Appeals was of the opinion that two previous cases of this court, State v. Shing, 109 Ariz. 361, 509 P.2d 698 (1973) and State v. Benton, 109 Ariz. 427, 510 P.2d 743 (1973), were in conflict, and followed what appeared to be the holding in State v. Benton, supra.

In State v. Benton, supra, we stated:

"The defendant also claims that certain questions asked him during cross-examination and several statements made by the prosecutor during closing argument constituted reversible error, even though not objected to at the time.

"The arresting officers testified that they merely served the warrant upon the defendant telling him it was for robbery and he said he was not involved in any

robbery. The prosecutor asked him if he had told this to anyone else and he replied that he had not. No objection was made to this line of questioning and we cannot see that it raises any question of fundamental error. * * *" State v. Benton, supra, 109 Ariz. at 428, 510 P.2d at 744–745.

In Benton, supra, the defendant's silence occurred after the initial denial of guilt and continued to the time he took the stand to testify. The comment concerned his failure to reassert this innocence prior to the time he took the stand in his own behalf. In the other case considered by the Court of Appeals, State v. Shing, supra, after the defendant had been read his "standard rights card" the following questions were asked:

" 'I asked him if he wanted to talk to us. He said, "yea."

" 'I told who I was naturally. I asked him how many people were there—originally were there. He didn't want to discuss that. I asked him if he wanted to tell me who it was. He said, "No." Later, Detective Lines returned with what we thought was a suspect, and I asked Mr. Shing if he would look at this person and identify him. He said, "No."

\* \* \* \* \* \*

"In his closing argument the prosecutor commented:

'Perhaps, the most significant thing about * * * Mr. Shing's behavior was his silence. He had an opportunity to explain his presence at the airstrip. He didn't do so. He had an opportunity to identify someone else who might or might not be involved. The officers didn't know. He didn't know, but Mr. Shing, did not avail himself of that opportunity'."

State v. Shing, supra, 109 Ariz. at 364, 509 P.2d at 700–701.

The Shing case is, of course, a much stronger case in that the defendant had been given his "Miranda warnings," including the right to remain silent, and the defendant immediately chose to exercise

that right. In Shing, supra, we held that comment on the exercise of that right was fundamental error. See also State v. Greer, 17 Ariz.App. 162, 496 P.2d 152 (1972).

The cases are not unanimous on this question. The Kansas Supreme Court in State v. Jackson, 201 Kan. 795, 443 P.2d 279 (1968), relied upon by the Court of Appeals in this case, has held that this type of comment is not error as has the United States Court of Appeals for the Third Circuit, United States ex rel. Burt v. New Jersey, 475 F.2d 234 (1973). Colorado, in a remarkably similar case, reached the same result, Johnson v. People, 172 Colo. 406, 473 P.2d 974 (1970). However, the Tenth Circuit reversed the Colorado court in Johnson v. Patterson, 475 F.2d 1066 (1973). The facts as set forth in the Tenth Circuit opinion are as follows:

" * * * During cross-examination of Johnson, the following questions and answers took place:

Q. Now, Mr. Johnson, you didn't tell the police this, did you?

A. No, sir.

Q. The first time then that anyone has heard this is here today in court, is that correct?

A. No, sir. I told Mr. Hellerstein when he came out to see me in the County Jail.

Q. Mr. Hellerstein, your attorney, is that correct?

A. Yes, sir.

During closing argument the prosecution again referred to Johnson's failure to tell the police his story.

And isn't it interesting that this is the first time that he has decided to tell the truth other than, of course, he testified that he told his lawyer, and didn't bother to tell the police."

475 F.2d at 1067.

In holding that this was fundamental error, the court stated:

"Appellant argues that the comment on Johnson's failure to tell his story to the

police was used to impeach his testimony and therefore falls within the ambit of Harris v. New York, *supra*, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1. * * * When a defendant makes a statement at trial which is inconsistent with an earlier statement his credibility is clearly in question. This rationale does not follow with silence at the time of arrest. As the trial court properly found in the instant case, silence at the time of arrest is not an inconsistent or contradictory statement. Silence at the time of arrest is simply the exercise of a constitutional right that all persons must enjoy without qualification. (citations omitted) It would indeed be irregular and anomalous to warn an accused that he has the right to remain silent, that if he says anything it may be used against him, however, if he does remain silent that too may be used against him. (citations omitted) This would be the practical effect of allowing the prosecution to use at trial the fact that an accused remained silent, clearly making the assertion of the constitutional right costly. *See* Griffin v. California, *supra*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106." 475 F.2d at 1068. See also Fowle v. United States, 410 F. 2d 48 (9th Cir. 1969); Fagundes v. United States, 340 F.2d 673 (1st Cir. 1965); and Grunewald v. United States, 353 U.S. 391, 77 S.Ct. 963, 1 L.Ed.2d 931, 62 A.L.R.2d 1344 (1957).

Although the one question and answer standing alone without objection and without further elaborating questions might not be prejudicial, we believe that the question together with the comments thereon to the jury was fundamental error, and anything in State v. Benton, supra, and State v. Belcher, 108 Ariz. 290, 496 P.2d 590 (1972), to the contrary are by this opinion disapproved.

Having determined that the cross-examination together with the comments to the jury was fundamental error, we may look to the record to see if the error was harmless beyond a reasonable doubt. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). In so doing, it should be kept in mind that while the doctrine of harmless error is a useful appellate device for insuring justice when the evidence of guilt is overwhelming and the record reflects that the error, though fundamental, did not contribute to the guilty verdict, the prosecution should be reminded that fundamental error is still error and is not turned into non-error by the overwhelming evidence of guilt. By thus approaching the precipice of fundamental error, the prosecution runs the risk of having an otherwise good case reversed when, on appeal, the evidence of guilt is less than overwhelming.

In the instant case, the owner of the items stolen, a Nikon F camera, a Nikorex camera, and a 300 MM lens for the Nikon, testified that the defendant stayed at his house for a week and a half and then left. The accomplice testified as to the details of the burglary, and the pawnbroker testified that the defendant brought the camera and lens into the shop and received $50.00 for them. The defendant, by his own testimony, clearly implicated himself in the crime. Although contending that he was merely returning to get his painting equipment that he had left at the house, the defendant testified that he had the accomplice purchase some tape before they went to the house. He stated that he intended to tape the window and then break it in order to gain entry into the house. The defendant testified that the accomplice took the cameras but admitted that he sold the cameras to the pawnbroker. With these overwhelming facts, we can say that the error of the county attorney did not, beyond a reasonable doubt, contribute significantly to the verdict.

Opinion of the Court of Appeals is approved except as to the matter discussed herein. Decision of the Court of Appeals and the judgment of the trial court is affirmed.

HAYS, C. J., and STRUCKMEYER, LOCKWOOD and HOLOHAN, JJ., concur.