IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

ROXANNE MEKEEL, *Appellant.*

No. 1 CA-CR 23-0102

FILED 12-05-2024

Appeal from the Superior Court in Maricopa County
No.  CR2021-140057-001
The Honorable Michael S. Mandell, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Gracynthia Claw
*Counsel for Appellee*

Law Office of Stephen M. Johnson, Phoenix
By Stephen M. Johnson
*Counsel for Appellant*

---

**OPINION**

---

Judge Michael J. Brown delivered the opinion of the Court, in which Presiding Judge Samuel A. Thumma and Judge Jennifer B. Campbell joined.

---

**B R O W N**, Judge:

¶1            Defendant Roxanne Mekeel appeals her convictions for aggravated assault, resisting arrest, and criminal trespass.   The issue presented is whether fundamental, prejudicial error occurred when the trial court failed to take appropriate action after discovering that an unadmitted exhibit was inadvertently provided to the jury.   Although fundamental error occurred, we affirm because Mekeel has not shown she was prejudiced.

**BACKGROUND**

¶2            In October 2021, a City of Phoenix employee was approached by patrons at a city park.  They informed the employee that a woman was causing a water fountain at the park to overflow.   The employee approached the woman, who was later identified as Mekeel, and asked her to "please quit running the water."  He then asked what she was doing, to which she replied she was "waiting for cigarettes to come out of the water fountain."  After asking her to leave, which she refused, the employee called the police.

¶3            About 30 minutes later, police officers G.A. and J.H. arrived at the scene.   Officer G.A. approached Mekeel, informed her she was trespassing, and asked her to leave or she would be arrested.   Mekeel refused and started to walk away but as Officer G.A. approached her, she turned around and raised a bag she was carrying as if she were going to hit him.  Officer G.A. was eventually able to force Mekeel to the ground where she continued to resist and kicked Officer J.H.   The officers managed to place handcuffs on Mekeel and as they were rolling her onto her side she reached into the back of her pants, grabbed her own feces, and smeared it on Officer G.A.'s pants.  The incident was captured on video by each of the officers' body cameras.

¶4            A grand jury later indicted Mekeel for resisting arrest, a class six felony, criminal trespass in the third degree, a class three misdemeanor,

and two counts of aggravated assault, each a class five felony. After competency evaluations and written reports were completed, the trial court found that Mekeel "understands the proceedings[,] is able to assist with [her] defense," and is therefore "competent pursuant to A.R.S. [§] 13-4510(B)."

¶5 At trial, the City employee and both officers testified, and the jury watched two body camera recordings, which were admitted as evidence. Mekeel testified briefly and admitted having two prior felony convictions, but no evidence was presented about the details of those crimes. She remembered being at the park for "maybe four days," admitted she refused the City employee's request to leave, and briefly recounted what she remembered about her interaction with the officers. The only other exhibit admitted in evidence was a redacted booking photo of Mekeel.

¶6 Before the jury started its deliberations, a court clerk inadvertently placed State's Exhibit 1 (a 62-page binder which had not been admitted in evidence) in the jury room along with the three admitted exhibits. Exhibit 1 included police reports (with narratives from each officer), an evidence item report, a release questionnaire, an unredacted booking photo of Mekeel, a police department response to resistance report, an Arizona Department of Corrections summary report with a photo of Mekeel along with her fingerprint card, and the sentencing minute entries of Mekeel's two prior felony convictions (2014 theft and 2015 possession of dangerous drugs). After the court learned about the error, the following exchange occurred between the judge and the attorneys:

> COURT: [W]e called you back because we had a little bit of a situation arise, and I wanted to appraise you all of that. When the jury went back to the jury room, our clerk accidentally included Exhibit 1, which is the binder. It has the police report, the – I believe the Form 4 and some other stuff as part of that binder.
>
> [A]nd so it went back to the jury room for about a half an hour, maybe a little less in time. We – I did have [the courtroom assistant] go back and ask the jurors whether or not anyone had actually reviewed the exhibit. He stated one of the jurors had reviewed the exhibit but kinda thumbed through it and didn't really spend any time on it. But I wanted to bring it to your attention so that we could address the issue if necessary.

[DEFENSE]: They are saying they didn't read anything?

COURT: She said – according to what [the courtroom assistant] had – what she said to [him] that he conveyed to me was that she had reviewed – or basically thumbed through it, as I understand it, but she said it wasn't anything that she was going to consider.

[STATE]: Do we know if anything was discussed with the others? . . . I guess we can't get into deliberations. I take the jurors at their word. I provided Defense an identical copy of the binder. I can't think of anything in those reports that would be prejudicial. I know it's not evidence, but I don't think there is anything that would contaminate the case that they weren't supposed [to] hear.

I don't think there's any mention of prior convictions in there. I think, if anything, it would just be more descriptive of the initial conversation with the State's first witness.

[DEFENSE]: My copy, I do have a prior conviction on Page 58.

[STATE]: That is true.

[DEFENSE]: The prior convictions are in the binder.

[STATE]: There's more than the police report. It's additional discovery.

[DEFENSE]: I mean, did she discuss the binder with any of the other jurors?

COURTROOM ASSISTANT: What she – what she relayed to me was that she thumbed through the binder. She informed the jurors of what was in the binder. She said that they all thought it was past stuff and it didn't pertain to what they needed to discuss right now, then she sat the book down.

[STATE]: The State's view, Judge, is there is an instruction – because when the Defendant took the stand, Defense withdrew the thing on the priors, and [the jurors] were given an instruction that they are not to consider the priors for

4

anything other than her credibility. I think the only other thing that would be in there is the booking photo.

And in the State's view, the booking photo is not prejudicial because they know that she was arrested, processed for booking. The entire reason [the jurors] are here is to determine whether or not the State proved she did anything wrong.

[DEFENSE]: I mean, we do have two alternates. I don't know how long that would prolong things if we just removed her.

COURT: That is a possible solution. From my standpoint – and if you made a motion for mistrial or something along those lines, it doesn't sound to me like in this case whatever was in that binder is going to make a great bit of difference. And so I mean, having everything on bodycam, being the entirety of the case is really on video and [the jurors] were able to see the entirety of the case on video to make a determination with regarding the counts, I mean, certainly it shouldn't have happened. And, you know, on behalf of the Court, you know, obviously we apologize for it happening. But I don't know that it would rise to the level of contaminating the jury.

[STATE]: What I think we might do, Judge, is admit that binder for appellate purposes in case they do return a guilty verdict and it goes up on automatic appeal. That way, the Court of Appeals can render whatever decision they deem appropriate.

[DEFENSE]: I mean, that's fine.

COURT: Okay. If – if that was a motion to remove this juror and then pick an alternate – is that what –

[STATE]: I don't know how much difference it would make if they said they weren't going to consider it because it was past stuff. Removing just one doesn't make a difference, but I won't oppose the motion. I just don't know that it makes a difference.

[DEFENSE]: Obviously, we can't gauge what difference it makes. We don't know.

COURT: Right.  I didn't know if you were making a motion or if you were not.

[DEFENSE]: Well, I mean, I don't want to hold everybody up, but I guess, you know, that's fine.  I'll leave it to the discretion of the Court.

COURT: Okay.  From what – from the description that I had heard, I don't think that it rises to the level of needing to replace the juror.  But certainly from the standpoint for appellate purposes if there is an appeal, then Exhibit 1 will be admitted for appellate purposes.

¶7            Shortly thereafter the jury found Mekeel guilty of aggravated assault of a police officer, resisting arrest, and criminal trespass, but not guilty on the second count of aggravated assault of a police officer.  The superior court suspended the sentence and, instead, placed Mekeel on two years of supervised probation, with 30 days of jail time.  Mekeel timely appealed, and we have jurisdiction under A.R.S. §§ 12-120.21(A)(1), 13-4031, and -4033(A)(1).

## DISCUSSION

¶8            Mekeel argues the superior court should have ordered a new trial because "the jury received extrinsic evidence not properly admitted during the trial."  She also argues the court erred in failing to take additional corrective action as result of the error, such as questioning the jurors individually about their exposure to the unadmitted exhibit and conducting an evidentiary hearing.[1]  Although defense counsel offered various options about how the error could be handled, he did not request that the superior court take any specific action.  Because Mekeel did not object to how the court ultimately handled the matter, she has failed to preserve these claims for appeal.  That means we review her arguments for fundamental error resulting in prejudice, the applicable standard Mekeel acknowledges in her opening brief.  *See State v. Escalante*, 245 Ariz. 135, 138,

---

[1]      Mekeel also points out her trial attorney's failure to seek a mistrial or ask that the jurors be further questioned.  Claims based on deficient performance of trial counsel, however, cannot be reviewed on direct appeal.  *See State v. Spreitz*, 202 Ariz. 1, 3, ¶ 9 (2002) (explaining that "ineffective assistance of counsel claims are to be brought in Rule 32 proceedings," and will not be addressed on direct appeal regardless of merit).

¶ 1 (2018) ("When a defendant fails to object to trial error, he forfeits appellate relief absent a showing of fundamental error."); *accord* Ariz. R. Evid. 103(e).

### A.     Fundamental Error

**¶9**         To show fundamental error, Mekeel must establish (1) error going to the foundation of her case, (2) error that deprived her of a right essential to her defense, or (3) error of such magnitude that she could not possibly have received a fair trial. *Escalante*, 245 Ariz. at 142, ¶ 21.  If she establishes fundamental error under the first or second prong, she must then show resulting prejudice, a fact-intensive inquiry.  *Id.*  If the third prong is established, "[s]he has shown both fundamental error and prejudice, and a new trial must be granted."  *Id.*  Mekeel "bears the burden of persuasion at each step."  *Id.*

**¶10**        The jury should not have seen Exhibit 1, which had not been admitted in evidence, and thus trial error occurred.  *See* Ariz. R. Evid. 103(d) ("[T]he court must conduct a jury trial so that inadmissible evidence is not suggested to the jury by any means."); *State v. Turrentine*, 122 Ariz. 39, 41 (App. 1979) ("The jury may consider only matter that has been received in evidence . . . ."); *see also* Ariz. R. Crim. P. 22.2(a) ("Upon retiring for deliberations, jurors must take into the jury room: (1) forms of verdict approved by the court; (2) jurors' copies of the court's instructions; (3) jurors' notes; and (4) tangible evidence as the court directs.").

**¶11**        This error was fundamental because it deprived Mekeel of a right essential to her defense.  A jury's verdict "must be based upon *the evidence developed at the trial*," a requirement that "goes to the fundamental integrity of all that is embraced in the constitutional concept of trial by jury."  *State v. Miller*, 178 Ariz. 555, 557 (1994) (internal quotation and citations omitted) (emphasis added).

**¶12**        A juror "receiving evidence not admitted during the trial or phase of trial" is grounds for a new trial.  Ariz. R. Crim. P. 24.1(c)(3)(A). And compounding the error in this case, the trial judge directed the courtroom assistant to speak with jurors to inquire about who had reviewed the binder, doing so outside the presence of the judge, and without giving prior notice to the parties or their counsel.  *Cf.* Ariz. R. Crim. P. 22.3(c) (requiring notice to the parties "before testimony is repeated or before giving additional instructions" to the jury).  Simply stated, the jury should not have been given Exhibit 1 and, when that error was discovered, it should have been handled quite differently than what happened here.

¶13　　　　For example, after the jury began its deliberations, all communications between the trial judge and the jury should have been made in writing, as stated in the jury instructions:

> Should any of you or the jury as a whole have a question for me during your deliberations or wish to communicate with me on any other matter, please utilize the jury question form that we will provide you.  Your question or message must be communicated to me in writing and must be signed by you or the foreperson.  I will consider your question or note and consult with counsel before answering it in writing.

Because the communications between the courtroom assistant were verbal only, and not recorded, the record lacks any meaningful details about how Exhibit 1 was brought to the attention of the courtroom assistant or whether any substantive discussion occurred at that time, given that everything was off the record.  The record before us is also unclear about the extent to which the trial judge reviewed Exhibit 1, casting doubt on whether he understood the seriousness of the error.

¶14　　　　And as soon as the courtroom assistant alerted the trial judge about Exhibit 1 being given to the jury in error, the trial judge should have immediately notified the parties.  Instead, the record before us shows that the judge directed the courtroom assistant to ask the jurors about the extent to which they had reviewed Exhibit 1.  Thus, the parties were deprived of the opportunity to learn of the problem and present their positions before that investigation occurred.[2] *See State v. Rich*, 184 Ariz. 179, 181 (1995) ("[If] a trial judge acts without notice, the litigants have no opportunity to object or voice their concerns regarding the judge's procedure until it is too late.  The damage is done.") (quoting *Perkins v. Komarnyckyj*, 172 Ariz. 115, 118 (1992)).  Generally, "reversible error occurs when a trial judge communicates with jurors after they have retired to deliberate, unless

---

[2]　　　　The discussion with counsel and the courtroom assistant occurred without Mekeel being present or confirmation that she waived her right to be present.  *See* Ariz. R. Crim. P. 19.2 (stating that a defendant "has the right to be present at every stage of the trial").  Defense counsel noted that "[s]he's outside, Judge, if you need her."  The judge replied that she "doesn't have to necessarily be in for this part" and then continued with the discussion about Exhibit 1.  Although Mekeel may have ultimately decided not to attend, she had a right to be present and should have been given the opportunity to exercise, or expressly waive, that right.

defendant and counsel have been notified and given an opportunity to be present." *State v. Mata*, 125 Ariz. 233, 240–41 (1980). And the same problem exists if the judge directs court staff to communicate with jurors about substantive matters relating to the case without notice to the parties. *See id.* (concluding that court's communication with a juror "through the bailiff" was not "reversible" error).

¶15 As shown by the events that happened here, it is critical that trial judges adhere to the principle that the parties be informed of any jury issue brought to a judge's attention before the judge (or court staff) engages in any further communication with the jury about substantive matters affecting the case. *See, e.g.*, *State v. Robin*, 112 Ariz. 467, 467 (1975) (reversing because the jury sent the judge factual questions about the case and the judge answered from his notes "in the absence of the defendant and counsel"); *State v. Werring*, 111 Ariz. 68, 69 (1974) (reversing because although counsel were informed of a jury note, they were not allowed to see the note or to make a record of the incident before the judge answered the questions); *State v. Burnetts*, 80 Ariz. 208, 210 (1956) (reversing because the judge responded to a jury question about the case without following appropriate safeguards); *State v. Corrales*, 121 Ariz. 104, 105 (App. 1978) (reversing because the jury's note said they could not reach a decision and the judge replied that they should continue their deliberations but made no record of the exchange).

¶16 Accordingly, the better approach under these circumstances would have been for the trial judge, upon learning of the error, to ensure that Exhibit 1 was immediately removed from the deliberation room. The judge then could provide the required notice to the parties and discuss, with Mekeel and counsel present and on the record, the appropriate next steps to take. Those next steps could involve a variety of inquiries, including (1) questioning of the courtroom assistant under oath by the judge and the parties; (2) determining whether any of the jurors reviewed Exhibit 1 and, if they did, speaking with those juror(s) individually, with Mekeel and counsel present and on the record; and (3) determining what additional steps were warranted based on that information. *Cf. State v. Burns*, 237 Ariz. 1, 26–27, ¶¶ 113–21 (2015) (recognizing that the trial court investigated the matter and questioned the jurors after they received extraneous information); *State v. Aguilar*, 224 Ariz. 299, 300, ¶ 3 (noting that the trial court held evidentiary hearings during which the court and counsel questioned each juror about their reliance on internet definitions); *State v. Meehan*, 139 Ariz. 20, 22 (App. 1983) (explaining that after hearing testimony from jurors about inadmissible evidence they received during

deliberations, the judge was in the best position to evaluate whether the jury was improperly influenced).

**¶17** Unfortunately, none of that happened and, instead, the courtroom assistant questioned at least one of the jurors, off the record and outside the presence of the court, Mekeel, and counsel. *See Corrales*, 121 Ariz. at 105 ("The danger that the judge may not remember the events clearly, as demonstrated in the instant case, requires the making of a record in the presence of all parties."). The courtroom assistant informally reporting back the result of those inquiries, not under oath, represented the sole basis for the remaining exchange quoted above, which was also fundamental error.

### B. Prejudice

**¶18** Because fundamental error occurred, we turn to prejudice, which Mekeel must establish by "showing that without the error, a reasonable jury could have plausibly and intelligently returned a different verdict." *Escalante*, 245 Ariz. at 144, ¶ 31. A reasonable jury is "composed of persons of average intelligence and judgment" using "common sense in considering the evidence presented in connection with the instructions given by the court." *Id.* (citation omitted). In applying the "could have" standard, we must keep in mind that fundamental error is rare, is curable only with a new trial, and thus the "'could have' inquiry necessarily excludes imaginative guesswork." *Id.* In applying the standard, we "examine the entire record, including the parties' theories and arguments as well as the trial evidence." *Id.*

**¶19** The jury's review of physical evidence should have been limited to the one-page redacted booking photo and the two CDs containing the body camera recordings. Instead, the jury was given a 62-page binder containing information that was not presented at trial, including police reports, unredacted photos, inmate information, and minute entries documenting her two prior convictions. While the substance of the police reports was presented to the jury through testimony of the two arresting officers and the body camera recordings, the reports contain details that were not presented through trial testimony or the recordings. And the only information that was properly conveyed to the jury during the presentation of evidence was that Mekeel had two prior felony convictions, but the last 10 pages of the binder included additional details about those convictions.

¶20　　　　Despite the gravity of the error, and given the limited inquiry conducted by the court (which defense counsel did not oppose), the information gleaned through the courtroom assistant revealed that one juror "thumbed through the binder" and informed other jurors of what was in it. The courtroom assistant then noted that all the jurors "thought it was past stuff" that was not pertinent to what they needed to discuss. Thus, because nothing in the record suggests that the jury relied on the contents of Exhibit 1 in reaching its verdicts, she has not established prejudicial error.

¶21　　　　Moreover, the evidence supporting the jury's verdicts is overwhelming. *See Escalante*, 245 Ariz. at 143, ¶ 26 (concluding that the evidence was not overwhelming as part of fundamental error analysis); *State v. Trostle*, 191 Ariz. 4, 16 (1997) (concluding that prosecutor's improper comment on defendant's failure to testify did not contribute to the jury's verdict given the "overwhelming evidence of guilt and the context within which it was made"); *State v. Anderson*, 110 Ariz. 238, 241 (1973) (applying fundamental error review and affirming because the overwhelming evidence of guilt did not require reversal, but cautioning that "fundamental error is still error and is not turned into non-error by the overwhelming evidence of guilt"). The entire encounter between the two officers and Mekeel was recorded by two body cameras and shown to the jury. And there was no evidence contradicting the City employee's testimony that he told Mekeel she needed to leave the park.

¶22　　　　Finally, we are not persuaded by Mekeel's reliance on *Hall*, which recognized the principle that "[o]nce the defendant shows that the jury has received and considered extrinsic evidence, prejudice must be presumed." 204 Ariz. at 447, ¶ 16. *Hall* did not involve fundamental error review because defense counsel had preserved the extrinsic evidence issue for review by moving for a mistrial and a new trial after it was discovered that the bailiff told several jurors the defendant had tattoos on his wrists that looked like bracelets. *Id.* at 446, ¶¶ 11–12. On appeal, given these timely objections, our supreme court applied an abuse of discretion standard. *Id.* at 446–47, ¶¶ 12, 16. Given that we are reviewing only for fundamental, prejudicial error in this case, the analytical framework used in *Hall* does not apply here.

**CONCLUSION**

**¶23**        Based on our review of the entire record, Mekeel has not met her burden of showing that, without the error of Exhibit 1 being given to the jury, "a reasonable jury could have plausibly and intelligently returned a different verdict." *Escalante*, 245 Ariz. at 144, ¶ 31. Because Mekeel has not shown that the impact of the exhibit on the jury's deliberations was prejudicial, her convictions and resulting probation grants are affirmed.

