NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

ANDREW JAMES KERR, *Appellant*.

No. 1 CA-CR 24-0167

FILED 07-15-2025

Appeal from the Superior Court in Maricopa County
No. CR2018-101721-001
The Honorable Michael C. Blair, Judge

**AFFIRMED IN PART; VACATED AND REMANDED IN PART**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Michael O'Toole
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Jennifer Roach
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Presiding Judge Paul J. McMurdie delivered the Court's decision, in which
Judge Samuel A. Thumma and Judge Kent E. Cattani joined.

---

**M c M U R D I E**, Judge:

**¶1**          The defendant, Andrew James Kerr, appeals his conviction
and sentence for second-degree murder. We affirm Kerr's conviction
because he shows no prejudice on fundamental error review for an alleged
constitutional violation, and the record does not show that the jury
considered improper exhibits. We vacate his sentence and remand for
resentencing because it is not clear whether the superior court considered
its available options within the sentencing range.

### FACTS[1] AND PROCEDURAL BACKGROUND

**¶2**          The State indicted Kerr for the second-degree murder of Irene
East (a pseudonym). Kerr pled not guilty, and the case proceeded to a jury
trial where the State presented evidence of these facts.

**¶3**          Kerr and East met through an online dating app and later met
in person. On January 8, 2018, at around 7:00 a.m., the two exchanged texts
as Kerr sat in his car in the hotel parking lot where East was staying with
her cousin. East told Kerr that he could not come to her hotel room until her
cousin left later in the morning. Kerr replied that he would "pull up" when
East let him know her cousin was gone.

**¶4**          East's cousin left the hotel room at around 10:00 a.m. East
immediately texted Kerr, asking him to call her as soon as possible. Kerr
opened this message at around 10:30 a.m. and replied that he had just
woken up. About 15 minutes later, security cameras recorded a car that
matched Kerr's car parking at the hotel. A man got out of the car and
entered the hotel. Several hours later, at around 1:00 p.m., the man left the
hotel and drove away in the car. Location data showed Kerr's phone at the
hotel during the time the car was parked there.

---

[1]          We view the facts in the light most favorable to affirming. *State v.
Mendoza*, 248 Ariz. 6, 11, ¶ 1, n.1 (App. 2019).

¶5          East's cousin tried calling her from work on her lunch break, but East did not answer. When the cousin returned to the hotel room at around 5:30 p.m., her key card did not work. She called East and heard the phone ringing inside the room, but East did not come to the door. The cousin got a new key card from the front desk and opened the door to find East dead on the floor, cold to the touch, with blood on her mouth and the floor.

¶6          A medical examiner determined that East died from a steep-angle gunshot wound through her chest. Law enforcement found a fired bullet caught in her shirt and a spent .9 mm casing on the floor. In a later search of Kerr's car, they found a loaded .9 mm handgun Kerr had bought, two other casings, and a backpack consistent with that carried by the man in the security footage. Forensic testing matched Kerr's gun to the bullet and casing found in the hotel room. And at Kerr's apartment, where he appeared to live alone, law enforcement found a box of .9 mm ammunition consistent with the casing from the hotel room. They also found the store display card for Kerr's gun, clothing consistent with that worn by the man in the hotel security footage, and a journal in which the writer expressed unhappiness and anger about women.

¶7          Kerr told a detective he had never visited the hotel and did not know East. He also denied knowing the make and model of his car. He said he was not sure what type of gun he owned, did not know how to load it, and had never fired it.

¶8          At the trial, a forensic scientist from the Department of Public Safety Crime Lab testified that East's hand bore Kerr's DNA. The scientist acknowledged that other analysts at the lab had examined the packaging of the source items and generated the DNA profiles for her analysis.

¶9          The jury convicted Kerr of second-degree murder with two aggravators, and the court found no mitigators and sentenced him to the maximum 25-year prison term. Kerr appealed. We have jurisdiction under Arizona Revised Statutes ("A.R.S.") §§ 12-120.21, 13-4031, and 13-4033(A).

## DISCUSSION

### A.     The Forensic Scientist's Testimony Did Not Prejudice Kerr.

¶10        Kerr contends that the forensic scientist's testimony violated his rights under the Sixth Amendment's Confrontation Clause because others assessed the samples' integrity and identified the DNA profiles.

¶11        The Confrontation Clause ensures that a criminal defendant has "the right . . . to be confronted with the witnesses against him."[2] U.S. Const. amend. VI. It "bars the admission at trial of testimonial statements of an absent witness unless she is unavailable to testify, and the defendant has had a prior opportunity to cross-examine her." *Smith v. Arizona*, 602 U.S. 779, 783 (2024) (quotation modified). It applies only to statements that are both (1) hearsay and (2) testimonial. *Id.* at 784-85. The Supreme Court recently held in *Smith* that the hearsay prong was satisfied when a substitute expert relayed the original expert's records and thereby "effectively became [the original expert]'s mouthpiece." *Id.* at 790-91, 800. The Court held that "[w]hen an expert conveys an absent analyst's statements in support of his opinion, and the statements provide that support only if true, then the statements come into evidence for their truth." *Id.* at 783. And "that will generally be the case when an expert relays an absent lab analyst's statements as part of offering his opinion." *Id.*

¶12        The case before us involves not a substitute expert but an expert who relied on her colleagues' preparatory work—*i.e.*, their inspection of the samples and packaging, and their generation and identification of DNA profiles—to make her comparisons and form her opinions. She explained that her lab takes "a team approach" where she sometimes "jump[s] in the middle" of lab work after reviewing others' work records (which also undergo a separate technical and administrative review process). These facts differ from those of *Smith* and may well present a novel issue. *See* 602 U.S. at 789-91.

¶13        But the State does not ask us to distinguish *Smith*'s hearsay analysis. Nor does the State argue that the statements were non-testimonial,

---

[2]        Article 2, Section 24, of the Arizona Constitution is functionally identical. *See State v. Aragon*, 258 Ariz. 218, 220, ¶ 10 (App. 2024) (Article 2, Section 24, which guarantees criminal defendants "the right . . . to meet the witnesses against him face to face," is coextensive with the Confrontation Clause.).

despite the question left open in *Smith*. *See* 602 U.S. at 784 ("'[T]estimonial statements[]' [is] a category whose contours we have variously described."); *compare id.* at 800-01 *with id.* at 804 (Thomas, J., concurring in part) & *id.* at 806-07 (Gorsuch, J., concurring in part) (Concurring Justices in *Smith* questioned the propriety of the opinion's non-dispositive description of the "primary purpose" test for determining whether a statement is testimonial.). The State does not address Kerr's extensive arguments that his confrontation rights were violated, and instead argues only that even assuming error, Kerr was not prejudiced. We therefore consider the State to have confessed error. *See Hecla Mining Co. v. Indus. Comm'n*, 119 Ariz. 313, 314 (App. 1978). Although accepting that confession of error, we express no opinion on the claim's merits.

¶14        We move instead to the parties' dispute about whether, assuming error, Kerr must prove prejudice. Kerr did not object to the expert's testimony at trial. A defendant's failure to object to trial error typically limits our review to fundamental error. *State v. Henderson*, 210 Ariz. 561, 567, ¶¶ 19-20 (2005). Fundamental error review means the defendant must prove not only that fundamental error exists but also that it prejudiced him or her. *Id.* Kerr argues that because his trial pre-dated *Smith*, he could not have objected on Confrontation Clause grounds and should be relieved of the burden to show prejudice.

¶15        We do not foreclose the possibility that a post-trial change in the law may excuse a defendant's failure to object. In other contexts, our supreme court has explained that a party's inaction should not impede his or her opportunity to obtain relief based on novel, non-foreseeable changes in the law. *See State v. Goodyear*, 100 Ariz. 244, 247 (1966) (The rule that a failure to object waived all appellate review did not apply to "place an unreasonable burden on defendants to anticipate unforeseen changes in the law" and make objections that "would have been futile." (quotations omitted)); *State v. Holder*, 155 Ariz. 83, 86 (1987) (In federal habeas corpus cases involving fully retroactive constitutional principles, a defendant may be excused for failing to raise a claim "so novel that its legal basis is not reasonably available to counsel." (quotation omitted)). Here, however, Kerr's assertion that he could not reasonably have objected before *Smith*'s publication is unavailing. *Smith* was not an abrupt or unforeseeable departure from unassailable principles—it was, by its own description, a resolution of a "muddle" of "confusion in courts across the country about the Confrontation Clause's application to expert opinion testimony." 602 U.S. at 789 (quotation omitted). In other words, *Smith* resolved a debatable question that Kerr reasonably could have raised. It was not an unpredictable blindside. *Smith*'s post-trial publication does not relieve Kerr

from the normal consequence of failing to make a timely trial objection. *See State v. Fordson*, 258 Ariz. 167, 171-72, ¶¶ 17-18 (App. 2024) (Fundamental error review applied to an appellate challenge under *Smith* when the defendant made no Confrontation Clause objection at the pre-*Smith* trial.).

**¶16** Thus, Kerr must show prejudice to prevail on appeal. *See Henderson*, 210 Ariz. at 567, ¶¶ 19-20. Prejudice is a fact-dependent inquiry unless the error is so egregious that the defendant could not possibly have received a fair trial. *State v. Escalante*, 245 Ariz. 135, 142, ¶ 21 (2018). The defendant must show that, without the erroneously admitted evidence, a jury could have reasonably reached a different verdict based on the evidence and arguments. *Id.* at 144, ¶¶ 29-31. The strength of the State's proper evidence is relevant to the analysis. *Id.* at 144-45, ¶ 34.

**¶17** We have no difficulty concluding that Kerr fails to show prejudice. Even without the DNA evidence, no jury could have reasonably failed to convict Kerr. Evidence showed that he had a relationship with East and met her alone in her hotel room the day she died from a bullet fired from his gun, which he then kept in his car. Kerr lied about the gun, his relationship with East, and his whereabouts on the day of her death. No evidence or argument suggested that anyone other than Kerr could have been responsible for East's death or that her death stemmed from anything besides murder. On this record, Kerr would not prevail even under a harmless error standard, much less under a fundamental error standard. *See State v. Bible*, 175 Ariz. 549, 588-89 (1993) (The erroneous admission of DNA probability calculations was harmless because the properly admitted evidence went "far beyond overwhelming evidence of [the defendant's] guilt" of murder, "refut[ing] any hypothesis other than [his] guilt" and "point[ing] with unerring consistency to one inarguable conclusion" of guilt.). Even assuming a Confrontation Clause violation, Kerr is not entitled to relief.

**B. The Record About Allegedly Improper Exhibits Does Not Permit Review.**

**¶18** Kerr next contends that the jury improperly received two exhibits not admitted at trial. He points to the court's exhibit records. The court's exhibit worksheet reflects that Exhibits 172 (listed as "Photo") and 278 (listed as "CD in envelope labeled Ramada Surveillance redacted 0600-1000") were not admitted into evidence. The court's tracking log and release form, however, reflect that those exhibits were given to the jurors and not returned to the State until after the verdict.

**¶19** Kerr did not challenge the exhibits until his appeal, arguing that he could not do so earlier. To be sure, his opportunity to object to the alleged error was limited—the court's records were not filed until the day he was sentenced, well after the deadline for seeking a new trial under Arizona Rule of Criminal Procedure 24.1(b). But his failure to develop the record precludes our review.

**¶20** We will not reverse a conviction based on speculation or unsupported inference. *State v. Diaz*, 223 Ariz. 358, 361, ¶ 13 (2010). Rather, errors must affirmatively appear in the record. *Id.* It is the appellant's burden to ensure that the record on appeal contains all necessary information for us to consider the issues raised. *Blair v. Burgener*, 226 Ariz. 213, 217, ¶ 9 (App. 2010). This burden exists because, without a complete record, we cannot determine the validity of an appellant's arguments. *Matter of Colton P.*, 242 Ariz. 437, 439, ¶ 11 (App. 2017).

**¶21** The record on appeal generally consists of all documents filed in the superior court, including minute entries, exhibit lists, transcripts, and other items. Ariz. R. Crim. P. 31.8(a)(1)(A). If the record is incomplete or misstated, the superior or appellate courts may direct corrections or additions. Ariz. R. Crim. P. 31.8(g)(1). "If a dispute arises about whether the record accurately discloses what occurred in the superior court, the dispute *must* be submitted to and settled by the superior court and the record conformed accordingly." Ariz. R. Crim. P. 31.8(g)(2) (emphasis added).

**¶22** The record here does not include the relevant exhibits or any information confirming they were actually sent to the jury. Kerr never sought to correct or reconstruct the record, either in the superior court or in this court. Thus, we have no way of knowing whether the alleged error occurred or, if it did occur, what the jury improperly saw. Although the State describes what it believes the exhibits contained, it confirms that the record does not include the exhibits, so these descriptions are purely conjectural. Unlike in *State v. Mekeel*, where the superior court addressed an improperly submitted exhibit before the close of trial and included it in the appellate record, there is nothing non-speculative for us to review here. *See* ___ Ariz. ___, ___, ¶¶ 6, 8, 561 P.3d 409, 411-13 (App. 2024); *see Velasco v. Mallory*, 5 Ariz. App. 406, 410-11 (1967) ("We will not render advisory opinions anticipative of troubles which do not exist; may never exist; and the precise form of which, should they ever arise, we cannot predict."). The issue is waived for appellate review.

## C. Kerr is Entitled to Resentencing.

**¶23** Kerr raises multiple challenges to his sentence. Among other things, he contends that the superior court erred by concluding it had to impose the maximum sentence. The State concedes relief is warranted on this point, and we agree.

**¶24** At sentencing, the court determined that "with two aggravators prove[d] [to] a jury, and nothing on the other side to counterbalance that, [] I'm left with nothing else than to order the aggravated term of 25 years." Twenty-five years' imprisonment is the maximum term for second-degree murder under A.R.S. § 13-710(A). Under A.R.S. § 13-701(C), the court "may" impose the maximum sentence if the jury finds at least one aggravator. But the maximum is not required — the statute grants discretion to impose a sentence within a range that extends to the maximum. *See* A.R.S. § 13-701(C); *State v. Allen*, 248 Ariz. 352, 368, ¶ 63 (2020) (Properly found aggravators give the court discretion to sentence the defendant "within a properly determined maximum range."). The court's failure to realize its discretion to deviate from the maximum requires us to vacate Kerr's sentence and remand for resentencing. *See State v. Garza*, 192 Ariz. 171, 176, ¶ 17 (1998).

**¶25** Given the remand, we need not address Kerr's arguments that the court improperly penalized him for declining to speak at sentencing, erroneously found no mitigation evidence, and (as the State agrees) erroneously retained jurisdiction over restitution beyond his sentence and imposed a victim's rights penalty assessment *ex post facto*.

## CONCLUSION

**¶26** We affirm Kerr's conviction but vacate his sentence and remand for resentencing.



MATTHEW J. MARTIN • Clerk of the Court
**FILED**:            JR